HAWK and wife <em>against</em> HARMAN and wife.

IN ERROR.

**E**RROR to the Common Pleas of *Dauphin* county.

Upon the trial of this cause, which was an action by *Hawk* and wife for slanderous words spoken of *Elizabeth* the wife of *Hawk, dum sola,* by *Catharine* the wife of *Harman,* (whether sole or covert at the time, the *narr* did not state) the Common Pleas reserved the point, whether a husband is liable for slanderous words spoken by his wife before marriage. The verdict was for the plaintiff, forty shillings damages, and six cents costs; and the court, after argument upon the reserved point, set aside the verdict, and gave

1812.<br>
CLARK<br>
v<br>
HERRING.

<em>Lancaster,</em><br>
<em>Monday,</em><br>
May 25.<br>
Action will lie against husband and wife, for slanderous words spoken by the wife before marriage.

1812.    judgment of nonsuit, upon which this writ of error was
        brought.

HAWK
*v.*
HARMAN.    *Goodwin* for plaintiffs in error.

*Elder* for defendants in error.

TILGHMAN C. J. The only question in this case is, whe-
ther an action will lie against a man and his wife for slan-
derous words spoken by the wife before marriage. It is a
question which does not admit of a doubt. The wife cannot
be sued without her husband; and if the action does not lie
against both, it follows that a woman by her own act may
defeat the plaintiff's action, a principle not to be endured,
unless a positive adjudication on the point could be produced
in support of it. But the defendant in error relies on the gene-
ral position to be found in some books of authority, that a
man is liable to answer for his wife's *contracts* before mar-
riage. To be sure he is, but it must not be inferred, that he
is not answerable for her *torts* also. The expressions do not
necessarily bear that import, and in candid construction,
they ought not to be so expounded. It would be attributing
to respectable authors an unaccountable mistake, for there
is not wanting express authority to the contrary. If a *feme
sole* is sued for a trespass, and marries, the action shall pro-
ceed against her, and if she is found guilty, judgment and
execution shall be had against her alone without naming her
husband. *Doyley* v. *White*, *Cro. Jac.* 323., cited in *Buller's
Ni. Pri.* 22. But if the suit is brought *after* the marriage,
for a trespass committed by the *feme while sole*, it shall be
against the *husband* and *wife*, and what is somewhat singu-
lar, the writ charges the trespass as having been committed
by *both*, because there is no other form of writ in the regis-
ter. It was so decided 22 *Ass. pl.* 87., *Jenk. Cent.* 23. *pl.*
43., cited in 4 *Vin.* 185, *C. l. pl.* 14. So if a *feme* disseiso-
ress marries, the writ against the husband and wife shall be,
*quod disseisiverunt,* and not *quod uxor dum sola disseisivit.*
In these cases there was no question about the action lying
against the husband and wife; the only doubt was, whether
the form of the writ was right. I am therefore of opinion,
that the judgment should be reversed, and judgment entered
here for the plaintiff below on the verdict.

YEATES J. The plaintiffs in error brought an action of slander against the defendants for defamatory words, spoken by *Catharine* of *Elizabeth*, while the latter was sole, and recovered at the trial 40*s*. damages and costs. The declaration does not state whether *Catharine* was single or married, when she spoke the words. But though the record is very obscure, and wants precision on this point, I shall assume the facts, which it was confidently asserted would appear by the notes of the judge who tried the cause, and not denied on the other side, that it appeared by the evidence that the words were spoken by *Catharine* before her intermarriage with *Harman;* that the objection was made during the trial, that this action could not be supported, and a nonsuit prayed for, that the legal question was reserved, whether the husband was liable for the tortious acts of the wife done before marriage;—and that afterwards upon argument, the Court of Common Pleas directed a nonsuit to be entered, upon which the present writ of error was brought. The question then is, whether under these circumstances this suit was maintainable?

There is no maxim better established in law, or more congenial to the common understanding of mankind, than that every person of sound mind and discretion, should be responsible for what he says or does injurious to others. Even an infant of the age of seventeen years, who in general is protected by the laws, is liable for slanderous words spoken by him; because *malitia supplet ætatem.* *Noy.* 129. It is true, a single woman may, by uniting herself in marriage, cast a responsibility for her former acts on her husband. According to Sir *William Blackstone,* 3 *Bla. Com.* 414., if an action be brought against an husband and wife, for the debt of the wife, when sole, and the plaintiff recovers judgment, the capias shall issue to take both the husband and wife in execution. *Moore* 704. But if the action was originally brought against herself, when sole, and pending the suit she marries, the capias shall be awarded against her only, and not against her husband. *Cro. Jac.* 323. Yet if judgment be recovered against an husband and wife for the contract, nay, even for the personal misbehaviour of the wife during the coverture, *Cro. Car.* 513., the capias shall issue against the husband only, and this is said to be one of

1812.

HAWK
v.
HARMAN.

the many great privileges of *English* wives. But what authority, or even dictum, can be shewn in the books, to warrant the assertion, that the tortious acts of a single woman are completely purged, and all right of action destroyed by her subsequent intermarriage. I own that I have not met with a case, wherein it has been adjudged that an action of slander will lie against husband and wife, for words spoken by the wife before marriage; most probably because the question has never been before made: but I have discovered no authority from whence the negative of the proposition may be inferred. The reason however of the law, and a variety of analogous cases, strongly support the doctrine that such an action may be maintained. The grounds on which the law presumes it reasonable, that the husband should be liable to the wife's debts contracted before marriage, whether he got any portion with her or not, are, that by the marriage, the husband acquires an absolute interest in the personal estate of the wife, and has the receipt of the rents and profits of her real estate during coverture; and whatever accrues to her, by her labour or otherwise, during the coverture, belongs to him. 1 *Bac.* 292, 1st *ed.* By marriage he adopts her and her circumstances together. 1 *Bla. Com.* 443.

The husband is by law answerable for all actions for which his wife stood *attached* at the time of the coverture; and also for all her torts and trespasses during coverture, in which cases the action must be joint against them both. 1 *Bac.* 307. If a man marries an administratrix to a former husband, who in her widowhood wasted the assets of her intestate, the husband is liable to the debts of the intestate during the life of the wife, and this shall be deemed a devastavit in him. *Cro. Car.* 603. Trover will lie against husband and wife on a conversion of the *feme* before marriage; so of detinue for goods taken by the wife before coverture. *Co. Lit.* 351. If a *feme sole* disseises me, and makes a feoffment to her use, and takes baron, I shall have an assise against both. *Bro. Pernour de profits*, pl. 22. Writ of trespass done by the *feme* before marriage, and writ of account of receipt by her before marriage, lies against husband and wife. *Thel. Dig.* 45. *lib.* 5, *c.* 4. *s.* 24., cites *Mich.* 4 *Ed.* 4. 26. Trover well lies for conversion of the *feme* before the co-

verture, or by the *feme* only during the coverture; for she
may do a tort singly, but the husband shall be sued with
her. *Cro. Car.* 254. See also *Bro. Responder et Responder
ouster, pl.* 29., who cites 36 *Hen.* 6. 1.

1812.

HAWK
v.
HARMAN.

The reason of the cases which I have cited, must necessa-
rily govern the decision of the question before us. The torts
of the wife committed before marriage must be subject to
the same legal principles. But if there had been an entire
dearth of cases on the subject of torts, my mind would re-
quire very high authority, before I could give my assent to
the proposition, that whatever outrage might be committed
by a single woman on the character of another, the law
would afford no redress to the injured party, in case the
slanderer should form a connection by marriage before the
commencement of the suit. I can never bring myself to be-
lieve, that the law is subject to such reproach, and therefore
am clearly of opinion that the present suit is maintainable,
that the judgment of nonsuit in the Common Pleas be re-
versed, and that judgment be entered for the plaintiffs on
the verdict.

BRACKENRIDGE J. It would certainly be a circumstance
favourable to the entering into the marriage state, and " a
consummation devoutly to be wished," on the part of fe-
males, if it afforded them a *sanctuary* from all bygones of
defamation, or other wrongs to society; so that, as during
marriage, no action could be brought against themselves
separately, so neither against them and the husband joined.
It might facilitate *the leading to the altar*, in a case where a
young lady had indulged herself more freely than was strictly
justifiable in a conversation, or had transgressed the bounds
of a *molliter manus imposuit*, and committed an assault and
battery. An immunity from her contracts or debts, the lover
cannot expect, *accouplè en loyal matrimonie;* but the being
subject also to actions for her *torts*, to use the legal term,
must augment the inconvenience. Nevertheless, with all the
inclination of my mind, it may be difficult to make out this
*privilegium matrimoniale*, shall I call it, which is claimed in
the present instance. Even the *privilegium clericale*, which
is analogous to it, does not extend so far. In the case of one

who becomes a monk, an action, though not against himself, may be brought against the head of the monastery, the abbot, for *misdemeanors* by the professed, previously committed, as well as for contracts made. And who can charge the law with a want of gallantry, if nothing more.is denied to the ladies than to a *religious?* Though we cannot allow these to be *spiritual* persons, nor, I take it, would they wish to be so considered, yet, as in the cases of the consecrated, they are privileged from arrest; and, though nominally coupled with the husband in the suit brought, yet the baron, which is the law term, can alone be taken on the capias, or be the subject of the service of the summons; and against his person, or his goods, can the execution alone go. That this is the case of those *religious*, who, by entering into holy church, loose to some extent a civil existence, is expressly laid down in the year book, 20 *H.* 6. 22. *Mettons que femme seule soit oblige a moy, et prend baron, le baron sera charge del debt durant la vie sa femme; mes si elle devie, le baron est decharge. Et en mesme le maniere, un homme fait a moy transgressionem, et entre in religionem, l'abbe sera charge vers moy durant la vie son commoin; et s'il devie devant que jeo recovrie, l'abbe sera decharge. Viner* cites this, and refers to the year book which I have consulted, and it bears him out. But it can only be by inference and analogy that he can deduce the law to be the same in the case of a trespass by the *feme*, as of a debt; *arguendo*, that it being the same in the case of the professed, it is also the same in the case of the *feme*. And the reason being the same, why should it not be? They are put as examples of the same doctrine. But in another place it is laid down in so many words, cited by *Viner*, and which in the year book to which he refers, is in these words; " *Si une femme fait obligation, ou fait a moy* trespass *et prend baron, jeo averois mon action vers eux. Car per son prendre un baron n'est raison que jeo suis ouste de mon action.*" 4 *Vin.* 94.

The *feme* and the regular are here put upon the same footing as to *an obligation*, and as *to trespass*. For the words, in construction, will refer to both, though what respects the monk is the next antecedent; but the reason is the same; and the case of the professed *is introduced to il-*

*lustrate the law as laid down with respect to the feme.* The construction seems to have been so understood by the abridgers, for no distinction is taken. The year book is cited by *Roll*, and by *Viner*, who translates it, " *Feme sole* binds herself in an obligation; baron is chargeable. So if a man enters into an obligation, and after enters into religion, *the abbey shall be chargeable* for this during the life of the monk. *The same law of a trespass.*"

But the weight of authority is derived from this, that the law is expressly laid down to be, that in case of contracts of the *feme sole*, the baron is chargeable; and the limit is not drawn *excluding torts;* but, on the contrary, the boundary is passed, and trover, detinue, waste, and tortious entry by the *feme sole*, are grounds of recovery against the baron. If trespass *vi et armis* is maintainable, which must be in the case of a tortious entry, how shall we exclude trespass on the case, of any denomination? In the spiritual court, in which, though having cognizance of slander " *merely spiritual*," the common law must govern as to the person to be affected in damages, we have an express authority in the case of slander. " Citation in the spiritual court against a " *feme sole* on slander, and 10*l.* awarded for defamation. *Feme* takes baron; he is answerable." 4 *Viner* 122, cites 12th *H.* 7th, 22. It is impossible therefore for me to say that, on espousal, a damsel is not taken with all her slanders on her head, and all her *trespasses*, and that the baron is not answerable. Nor can I say that, by losing a substantive existence by her own act, it would be reasonable that she should escape from all responsibility. Nor do I know that it can well lie in the mouth of the baron to complain, since he cannot but be considered as a party to the act of withdrawing on her part, and the taking shelter under the marriage state; more especially in the action on the case *for a breach of promise of marriage;* because the successful lover cannot but be considered as a party to the *fœdifragium;* for it cannot but be presumed, that but for him there would have been no *jilting.* It is however to the credit of the sex, that so little occasion has there been to pursue for *words, or breaches of the peace*, against the *feme* covert and *the baron joined*, that it should be made a question whether an action would lie at all; and that even at this late day, the law is to

1812.

HAWK
v.
HARMAN.

be deduced, rather from *principle* than precedent; unless we suppose that the chivalry of gallant men has led them to compromise, and satisfy on behalf of *their half*, if I may play upon a word; so that few or no actions have been brought, or at least left upon record, of the *more atrocious wrongs*, personal or otherwise. I will acknowledge, I have not made an extensive search through books of entries; but I take it from the little said in the abridgments, with a reference to cases, that they have not been *numerous*. I have only looked so far as to see, that it cannot be avoided to be laid down, that marriage neither *extinguishes nor suspends the right of action*. I mean that the right of action is not so far suspended, but that it may be brought against the *femme*, though with a joinder of the husband. For I take it, that though, on the death of the baron, the action would survive against the *feme*, yet, quere, in a case where the statute of limitation intervenes, *would not the suit be barred by not having brought it in the time of the husband?*

It is a consolation that his responsibility is confined to prosecutions merely *civil*, and that he is not *criminally* liable for her misdemeanors, or wounds inflicted, or thefts committed before coverture. Even in the case of a misdemeanor, he is subjected to no part of the imprisonment, if such be the sentence; nor would the law allow of his vicarious substitution. But if a fine is to be paid, it amounts to a levy upon him, since he must discharge it to keep her out of jail. In all affairs of human life, the sweet and the sour must be taken together; *qui sentit commodum, sentire debet et onus*. According to the marriage ceremony, she must be taken for better or worse; though I will not say, that in drawing up the form, there was a reference to this principle of law; but the words are broad enough to comprehend it, and it would look like a subtilty to explain away and exempt it. But the notion of marrying a lady in her shift free from incumbrances, may be set down amongst vulgar errors. The law being settled on this head, if there was any doubt of it before, it may lead to greater caution, and *put the unexperienced upon enquiry*, as to the conduct of the *inamorata* before the nuptials; and may lead the female to a single attention to her morals, as wrongs and breach of the peace may prevent her matrimony. It is true, the husband may

with more propriety call her his *dear* wife, if some of these drawbacks should come upon him; and with a safe conscience he may use the term as an *equivoque*, even if his affections should not be the strongest after marriage. By the common law also it is allowable to give due chastisement, which I take it, may extend to what was done before marriage as well as after, and take personal satisfaction; though on this head I will not undertake to be as clear as I am on the principal point, that he is answerable for her torts before marriage as well as after, which is all that it is necessary to decide in this case.