## CLAUSSEN, Guardian *v.* LA FRANZ.

Where a bill of exceptions recites the testimony of several witnesses, and concludes thus: "To all which testimony, for the purpose of preserving the same of record, the defendant excepts, and prays that this his bill of exceptions may be signed and sealed," and it does not appear from the record, that the admission of the testimony was objected to, or that it was embodied in the bill to be used on a motion for a new trial, whether the appellate court can notice such testimony, *quere?*

Under section 1977 of the Code, the instructions given to the jury by the court, are not a part of the record.

Claussen, guardian v. La Franz.

Where instructions are given or refused, to which a party excepts, the instructions, to be reviewed in this court, must be embraced in a bill of exceptions, or at least attached to it, so as to make their identity certain; and where they are not thus embodied or attached, they will be stricken from the transcript of the record.

One who invests another's money in real estate, and takes the title to himself, holds the land in trust for the person to whom the money belonged.

Where a widow holds the title to real estate in trust for her infant children, and subsequently marries, in an action against the husband to obtain possession of the land, the declarations of the wife, at the time of paying the money, and receiving the title, although made before her second marriage, are admissible in evidence against the husband, to prove that the money belonged to her first husband.

And where the wife, after her second marriage, makes a deed for the land (in which the husband does not join), declaring the trust, the deed is admissible in evidence against the husband, in an action to recover the possession.

Where a wife is a trustee only, and holds the title to realty for others, the husband cannot be regarded as a *bona fide* purchaser, without notice.

Under the provisions of the Code, a married woman may execute a trust, and make a valid deed of trust property, without the consent of the husband, or his joining in the conveyance.

Where in an action against the second husband to recover the possession of land held by the wife, in trust for her children by a former husband, it was claimed that the wife was entitled to a distributive share of the personal estate; that the money invested in the land was only a little more than the wife's distributive share of the personalty; and that the husband was entitled to claim for the wife, her share of said estate, and of this land, standing accountable for the balance; *Held*, 1. That the husband could not be allowed to maintain such a claim adverse to the action of the wife, where she is aiming to discharge her duty, and place the estate where it belongs. 2. That the wife, to obtain her share of the estate, must resort to the proper court, in the first instance.

Nor can it be urged as a defence in such action, that the wife is entitled to dower in the land, as of the real estate of her deceased husband, it not appearing that any claim for dower has been preferred, or any assignment of dower made.

Section 1205 of the Code, which provides that "declarations or creations of trusts, or powers in relation to real estate, must be executed in the same manner as deeds of conveyance, but this provision does not apply to trusts resulting from the operation or construction of law," does not forbid the declaration of a trust arising by operation of law.

The provisions of chapter ninety-six of the Code, relative to jurors, are to be regarded as directory.

It was the design of sections 1647 and 1777 of the Code, that a court should not be without the power of obtaining a jury, and should not fail for the want of one.

*Appeal from the Scott District Court.*

THIS was an action of right, brought by the plaintiff, as the guardian of Adolph H. and other minor children of Peter C. Burmeister, deceased, against La Franz, to recover the possession, and rents and profits, of certain real estate described in the petition. The petition alleges, that the father of said children, in the year 1847, negotiated the purchase of lot four, in block forty, in the city of Davenport, and paid of the purchase money one hundred dollars; that he lived in the house situate on said lot, from the time of such purchase until his death, which took place about the 5th of September, 1847, before a deed was executed for the same, by the vendor of said lot; that some short time before his death, the said father gave $400.00 to one A. H. Miller, and that said Miller employed Cook & Sargent to purchase for Burmeister, from the United States, two certain quarter of sections of land, described in the petition, which purchase they effected, taking the title therefor in the name of George B. Sargent; that said Burmeister died before any deed for said land, was made by the said Sargent; that about the time of the death of the said Burmeister, the said Miller, of the moneys of the said deceased, paid the said Sargent, the sum of $400.00, and that Maria E. Burmeister, then the widow of said deceased, but now the wife of defendant, took from the said Sargent a deed to herself for the said land; that the said Maria E., out of the proper moneys of her said deceased husband, paid to the vendor of said lot four, in block forty, the sum of $1,900.00, and took therefor a deed in her own name; that soon after obtaining the deeds for the land and the lot, the said widow of Burmeister intermarried with the defendant, and he thereupon took possession of said premises, and has ever since continued in possession, and has received the rents and profits for the same; and that shortly after the said intermarriage with the said defendant, the said Maria E., on the 6th of July, 1853, made her declaration of trust

in behalf of said infant children, and on the 12th day of September thereafter, conveyed by deed all of said premises to said children. Copies of the declaration and the deeds, showing title in the plaintiff's wards, are attached to the petition.

The answer of the defendant denies, that plaintiff is the legal guardian of the children named in the petition; denies that the plaintiff has any right or title in and to the premises; denies the right of the plaintiff to the immediate possession of the premises; denies the indebtedness for the rents and profits; and alleges, as new matter, that the premises are legally and properly the property of defendant, in right of his wife, who was, at the time of their intermarriage, seized of an estate of inheritance, in fee simple, in the whole of said real estate, and that this defendant has the right to the full amount of the rents and profits arising out of the same. To this new matter, a replication was filed, in which it is claimed, that the said Maria E., at the time of said intermarriage, and at the time of the said declaration of trust, and the said conveyance to said heirs of Burmeister, held the said legal estate in said premises in trust for said heirs of Burmeister, and by said conveyance to said heirs, the said legal estate passed to the wards of said plaintiff. A jury being called, the defendant interposed a challenge to the panel of the petit jurors, for the reason that they were not legally drawn, selected and summoned, setting forth the facts upon which the defendant relied to sustain the challenge, which challenge was overruled, and a jury selected and sworn. The cause was submitted to the jury on special issues, at the request of the plaintiff. The evidence adduced on the trial, so far as the same is material, will be found in the opinion of the court. The jury returned into court the following verdict: "We, the jury, find on the special issues submitted by the court—

"1. That the land and town lot mentioned in the plaintiff's petition, was purchased with the money left by Peter C. Burmeister, deceased.

"2. That defendant's wife (then widow Burmeister) did

take the title of said real estate in her own name, as trustee for the heirs.

" 3. That Maria E. La Franz has declared her trust, and conveyed the land to the plaintiffs.

" 4. That the defendant has not shown any title to said real estate in himself.

" 5. That the plaintiffs are entitled, for the rents and profits of said farm, and house and lot, to $3,281.25, including the moneys in the hands of the receiver, and the immediate possession of said real estate."

Motions for a new trial, and in arrest of judgment, were made and overruled, and judgment was entered upon the verdict. The defendant appeals, and in this court insists that the court below erred—

1. In overruling the challenge to the panel of petit jurors.

2. In giving the instructions asked by plaintiff.

3. In refusing to give the third, sixth, seventh, and eighth instructions asked by defendant.

4. In overruling the defendant's motion for a new trial.

5. In overruling the defendant's motion in arrest of judgment.

*W. E. Leffingwell*, for the appellant.

*Whitaker & Grant*, for the appellee.

Woodward, J.—Some preliminary examination is requisite, to ascertain the attitude of this cause in this court. The bill of exceptions which we number *four*, recites that the plaintiff proved the matters therein set forth, by witnesses therein named, to the number of eight, and concludes thus : " to all which testimony, for the purpose of preserving the same of record, the defendant excepts, and prays that his bill of exceptions may be signed and sealed," &c., and it is signed by the judge. There is no exception to the competency of the witnesses, nor to the admissibility of the testimony. This is a new manner of proceeding. There has

been no discussion upon the question, whether the court can properly notice this testimony, but the cause has been argued with much reference to it, on both sides.   We are not prepared to say whether it should be received.   Regularly, such a saving of testimony is: 1. Because improperly admitted; but here there is no such objection.   2. To use on a motion for a new trial; but it is not embraced in, nor connected with, the motion for a new trial in this cause.   If there is any other ground, it does not now occur to us.   As both parties have, in this case, referred to the testimony so saved, and especially the defendant, whose argument is, in many respects, based upon it, we will take notice of it, but without intending it as a precedent.

There are, in the papers, over six pages of instructions to the jury, asked by the one party or the other, regularly entitled as of this case, of the proper county, court, and term, and purporting to be signed by the judge of the proper district, showing, over his signature, which were given, and which refused.   But they are not contained in a bill of exceptions, or a motion for a new trial, nor attached to one; neither is there a bill referring to them; nor is there, in the papers, *anything* serving to show that the giving, or refusing to give, any of them, was excepted to, although some of them are made a ground for a new trial.   We have had occasion, at this term, to give some consideration to the questions, what papers constitute a part of the record, under section 1977 of the Code, and what must be embraced in, or at least referred to, by a bill of exceptions.   See *Mays* v. *Deaver*, *ante*, 216; *Claggett* v. *Gray*, *ante*, 19; and *McCrary* v. *Crandall*, *ante*, 117.   The question has presented itself to the court in several cases, when it was not moved by the parties, and where, therefore, no opinion is written upon it. In all cases, we have held, that the instructions of the court must be embraced in a bill of exceptions, or at least attached to it, and made very certain as to their identity, for they are not made part of the record by the above section.   They are sometimes oral, and sometimes in writing, and are *required* to be written only in two instances—that is, when

directed by the court, or requested by the party. They are put in writing, for certainty and convenience, on the trial, and to aid in taking a bill of exceptions; and in no case are they required to be filed or preserved. These instructions, therefore, must be stricken from the papers.

How does the case stand, then, and what have we to hear? There was a special verdict rendered by the jury on several issues or questions, and a judgment is entered thereon. These, with the petition and answer, make a cause.

The petition avers, that Burmeister negotiated the purchase of the lot, paid part of the purchase money, went into possession and lived there, and in a short time died. The testimony shows farther, that he took a bond for the conveyance of the lot, when the balance of the purchase money should be paid. He died on or about the 5th of September, 1847. After his death, the widow paid the remainder of the money due on this contract ($1,900.00), and took a deed in her own name, dated 16th of September, 1847. A short time before his death, Burmeister placed $400 in the hands of A. H. Miller, with instructions to enter or purchase at the United States land office, the two certain quarter sections of land in controversy, which was done, and title taken in the name of Sargent, who afterwards made a conveyance to the widow, on the 11th day of October, 1847; the $1,900.00 paid by her on the purchase of the lot, was of the proper moneys of her said husband, the said Peter C. Soon after [18th April, 1848], the widow, Maria E. Burmeister, intermarried with John H. La Franz, the defendant, who thereupon took possession of the premises before described, as purchased with the moneys of the said Peter C., and has ever since continued in the possession, and still is receiving the rents, issues and profits thereof. On the sixth [sixteenth] day of July, 1853, she made her declaration of trust in behalf of the said infants, the children of her former husband, in accordance with the facts hereinbefore set forth and charged On the 12th day of September, 1853, she conveyed the said lot and quarter sections of land, to the said infant children of her former husband. The petition concludes with a prayer

for the recovery of the said real estate, and also, thirty-five hundred dollars, the rents, issues and profits thereof for six years next before the filing of the said petition. The above-mentioned deeds of conveyance, are made part of the case, and the declaration of trust recites, that at the date of the said conveyances to her, she was the widow of Peter C. Burmeister, deceased, and by the said Peter, the mother of three infant children, named in the petition (of whom the plaintiff is guardian), and that all the real estate described in the said deed of declaration, was wholly purchased with the money belonging to said infant children; that on the 18th day of April, 1848, she married John H. La Franz; that the sum of $1,900, paid by her for said lot, and the sum of $400, paid to Sargent, for the said land, was not, nor was any part thereof, the proper money of her the said Maria, but that the same and every part thereof was, and is, the proper money of the said infant children; that the deed from Hoge of the lot, and from Sargent of the lands, were in trust only for the said children, and that the same are only held by her as the trustee of all and each of said infant children; and she covenants to convey at the request of the guardian. The defendant, La Franz, did not join in making the deed of declaration, nor in that to the children.

The defendant demurred to the petition, and the demurrer being overruled, he answered. The answer denies the right and title of the plaintiffs to the lot and lands, named in the petition, and to any part thereof; denies the claim of thirty-five hundred dollars for rents, issues and profits; and alleges that the said lot and tracts of land are properly and legally the property of defendant, in right of his wife, who was, during the coverture of the defendant and his said wife, and at the time of their intermarriage, seized of an estate of inheritance in fee simple, and that he has right to the full amount of the rents, issues and profits arising out of the same. The replication avers that the said Maria E., wife of defendant, held the said legal estate in trust for said heirs of said Burmeister, and that, by said conveyance to said heirs, the said legal estate passed to them.

The special issues or questions presented to the jury, are indicated by the finding. They find as follows : *First :* That the land and town lot mentioned in the plaintiff's petition, were purchased with the money left by Peter C. Burmeister, deceased. *Second :* That defendant's wife (then widow Burmeister) did take the title of the said real estate in her own name, as trustee for the heirs. *Third :* That Maria E. La Franz has declared her trust, and conveyed the land to the plaintiffs. *Fourth :* That the defendant has not shown any title to said real estate in himself. *Fifth :* That the plaintiffs are entitled for the rents and profits of said farm, and house and lot, to three thousand two hundred and eighty-one dollars and twenty-five cents, including the moneys in the hands of the receiver, and to the immediate possession of said real estate.

These facts and allegations constitute the cause which we are to decide. And the facts may be thus briefly stated. Burmeister, in his lifetime, contracted for the lot four, paid part of the money, and took possession. After his death, the widow paid the remainder of the money, and took a deed in her own name. She also paid four hundred dollars for the land, and took a deed in her own name. In both cases, the money she paid was money of her husband. She then married, and afterwards declared, by deed, that she held the property in trust for the plaintiff's wards, and then conveyed it to them, her husband, La Franz, not joining in the deeds.

The defendant, her husband, now claims, that by virtue of the marriage, he has a life interest in the property, which neither her act, nor the law, can take away. He claims that at the time of the marriage, she was seized in fee of this realty, and upon the marriage, he became seized of a *freehold estate,* a *vested estate,* in the wife's land.

Has the counsel for defendant overlooked one simple, but leading question, Was she seized *in her own right ?* He has not noticed this, but has seemed to assume, that the husband's marital right overrides this consideration, and ousts every one else, if the wife only held the legal title.

But this question lies at the foundation.   The husband can-not get, by the marriage, more estate, nor a better estate, than the wife had.   If she had obtained it by fraud, would the marriage heal the difficulty?   If she held in trust, does the marriage discharge the trust, or defeat it?   If the title was defective, does the marriage perfect it?   But it is said, that it is the homestead.   This does not make the title better.   If your title to the property is not good, your fixing the homestead there, will not mend it.   You may fix your homestead on a good title, but fixing it there, will not *make* a good title.   Thus all the rights of La Franz depend en-tirely upon what his wife had at the time of marriage. Now, let us inquire, whether she did or did not hold as a trustee.   The petition alleges, that the money she paid was of the proper moneys of her said husband, and the answer does not deny it.   The argument of defendant's counsel assumes it plainly.   The declaration of trust avers it.   The testimony of the witnesses, establishes it by her own declarations, made at the time of the purchase; and authorities are not needed to sustain the proposition, that one who invests another's money in land, and takes title to himself, holds the land in trust; that the land is *his*, to whom the money belonged.

But, it is objected, that the wife's declaration cannot be admitted to prove that the money belonged to Burmeister. We answer, first, the pleadings admit it.   In the next place, the only parol declarations in evidence on this point, were made at the time of, and connected with, the original trans-action, the paying the money on the taking the deeds, and all were made *before the marriage.*   Therefore, we deem them admissible.   *Jackson, Cox & Co.* v. *Helding*, 14 B. Munroe, 137; 1 Greenl. Ev. § 225; 1 Starkie on Ev. 301 to 304; 2 Russell, 63; *Barker* v. *Rag*, 3 Com. Eng. Ch. R. 33, and note and cases there cited; 3 Barn. & Adolph. 890; 1 Taunt. 141; 5 Ib. 222.

The admissibility of her declaration, presents itself in the deed declaring the trust.   This was made after the marriage. Shall this be rejected, because she is now a wife?   Shall the trust fail in consequence of her marriage?   This would

be an easy, and perhaps a pleasant, method to convert a trust into an absolute estate, and invest oneself with a valuable property. If this is a fraud on her husband, the property being purchased with her own, or his, funds, he is at full liberty to contest it, as he is now contesting this cause. But he does not pretend that the money was his; on the contrary, two or three days after his marriage, he says to the witness, Squires, "I was not worth a picayune, and now I have got a plenty." The deed is admissible, but it is the extrinsic evidence that gives it weight.

But her trust character is established, without the deed declaring the trust. Besides the testimony before alluded to, Cook testifies that "Burmeister being dead, some negotiations took place. The old deed and contract were canceled *by agreement*, and a new deed was made direct to her, she paying $1,900. She stated, as her reason, that she wanted to control and direct the property herself. There was no forfeiture of the contract by Burmeister, at the time of making the deed to Mrs. Burmeister." This relates to the lot. The above testimony means, that a written contract with Burmeister was destroyed, and that she was substituted in his place. What more can we have, to show the trust? and we are referred to this testimony by the defendant. Mrs. Burmeister, then, being only a trustee, and holding the title *for* others, what are the rights of her husband? They cannot be greater than hers. He cannot have a more absolute estate, than that on which his own hangs. His rights are exactly measured by hers. He cannot be regarded as a *bona fide* purchaser for a consideration, without notice. This is not like the English cases, in which the chancellor has set aside an ante-nuptial conveyance of the proposed wife, as a fraud on the husband. In those cases, she is supposed to be the real and actual *owner* of the estate. Whether with or without notice, his rights are in that only which his wife held *as her own;* in other words, his rights are in *her* property, and not in another's. He says, that upon marriage he became seized of a freehold, was entitled to receive the issues and profits in the right of his wife, and

Claussen, guardian v. La Franz.

that she cannot convey without his joining her. He applies to this case, the common law doctrine concerning the husband's rights in the wife's *own* lands. Here is his error. It is true that the books say, that the husband, on the marriage with a *femme* trustee, becomes co-trustee. But all this doctrine is based upon two grounds, namely: that there may not be a *failure of a trustee,* and the wife's inability to make a deed. This first ground is the real reason, it is presumed, why a trust estate descends to the heir, and why others take it in certain cases. Hill on Trustees, 232, 235, *n.* (1), 239, and 242; and part 2, chap. 2, 3, 4, 5. But neither the husband, nor any of the persons, so becoming trustees, take a *beneficial interest.* They take a naked title only, in fee, or otherwise, for the purposes of the trust. Only a *bona fide* purchaser, for a valuable (and adequate) consideration, without notice, takes the estate discharged of the trust. Hill on Trustees, *ubi supra.* It meant, then, that the husband trusts the *cestuis que trust,* and may take the rents and profits *to his own use.* This will not do. If he comes into the estate, he is but a trustee still. The above principles are applied to one who is made a trustee expressly by deed or will, but if there is any difference between such a one, and one who becomes trustee by implication, they would apply more strongly to him who became a trustee by a perversion of funds, or by fraud. As to the allegation, that she could not convey without her husband joining in the deed, this was true at common law; but, in the opinion of the court, this is changed by statute. As has been before remarked, by the Code, she may be executor or administrator, may make contracts in relation to her own estate, and may make a deed like another person. Under these and similar provisions of of the statute, in relation to married women, it is our opinion, that she could execute the trust alone, and make the deed. The husband taking no *interest,* but only a *naked power,* or title, the statute might take it away. It is not necessary, therefore, to determine whether the statute could take away a vested interest, such as is claimed.

Another ground of claim is advanced by the defendant.

He says, that Burmeister left a personal estate to some considerable amount, perhaps ten or twelve thousand dollars, of which about six thousand was money; that by law, his wife was entitled to a distributive share of one-third of this money (limiting the claim to the money at present); that she has invested only a little more than her share in this property, say $2,400; and that she is entitled to take, or rather that he is entitled to claim *for* her, her full share in this property, standing accountable for the excess only; or, at least, that she, and he through her, has right to her share of this property. It cannot be admitted for a moment, that any one entitled to a distributive share of an estate, can put his hand in and help himself. And especially cannot one, who is first bound to take care of it, and cause it to be administered in the manner the law directs. It is in evidence that this property has very much increased in value; and shall a tribunal called a court of justice, permit one, standing as she does, to say, "I will take this for my share," and leave the infant heirs of her husband to find their shares where they may? And where are the other three thousand and six hundred dollars of the six thousand? No administration has been taken on this estate. And still more, shall a court permit the husband to maintain such a claim, adverse to the action of the wife, when she is aiming to discharge her duty, and place the estate where it belongs? *Lewis* v. *Price*, 3 Richardson's Eq. 172; *Johnson* v. *Spaight*, 14 Ala. 27; 13 U. S. Dig. 383, §§ 23 and 26; *Stower* v. *The Commonwealth*, 4 Harris, 387; *Barrow* v. *Barrow*, 24 Vert. 375; 2 Richardson's Eq. 114; 1 Gill & Johns. 270; Toller's Law Ex. 38 & 9; 1 Williams on Ex. 136, 137, 138, 141, 333, 409; 7 Cruise, 64; 4 Dessausure, 459. The husband of a wife so intermeddling, is liable for her *devastavit* at common law, and liable for her torts. 26 Eng. L. and Eq. 397 and note; *Hawk* v. *Hammer*, 5 Binn. 43; *Knox* v. *Pickett*, 4 Dess. 92; *Palmer* v. *Wakefield*, 3 Dess. 227; *Cox* v. *Hoffman*, 4 Dev. & Batt. 180.

To get her share of the estate, the widow must go into the proper court. By investing her husband's money in real

Claussen, guardian v. La Franz.

estate, and taking a title in her own name, she becomes seized in trust for the estate, or in other words, for the heirs.

Then the defendant urges that she is entitled to dower in it, as of the real estate of her deceased husband. It does not appear that any claim for dower has been preferred, nor that any assignment of it has been made. Until this is done, he can have nothing on that ground. And if this right existed, perhaps she has relinquished it to the heir, which she could do, while sole. But, asks the defendant, can she relinquish this right after a second marriage, without the concurrence of her husband in the conveyance? In a cause which is legitimately extending itself so widely, we will not undertake to decide more than is before us. We hold that she was seized in trust, and that she may execute that trust, without the intervention of her husband. By the Code, §§ 1207, 1277, 1304, 1453 and 1454, she may make a deed, or will, or may act as executor or administrator, independent of him (which is a trust), and he is not liable for her separate debts. The reason why, at common law, she could not execute these trusts, was, that she could not make a deed, and her entity was lost in that of her husband, and he was responsible for her. But this is changed by our laws. A woman is now a person. See Bishop on Marriage and Divorce, §§ 717, 720, and note (3); and *Moore* v. *Mayer*, 4 Selden, 114; upon the relations of the marriage contract, or *status* to the law of the domicil. On the subject of dower and its relinquishment to the heir, and the wife's position in reference to it, before assignment, see *Lawrence* v. *Miller*, 1 Comstock, 245; Greenleaf's Cruise, tit. Dower, chap. 3, § 1 and note; *Good* v. *Atkins*, 14 Mass. 378; *Green* v. *Putnam*, 1 Barbour, 500; *Scott* v. *Howard*, 3 Barbour, 319; 1 Dev. & Batt. 448; 2 Iredell's Dig. 524; *Williamson* v. *Cox*, 2 Hayward, 4.

Under these views, it becomes unnecessary to discuss the questions, whether the common law estate by curtesy did, or does now, exist under our law? and whether the husband's interest in his wife's real estate, becomes, on marriage,

a vested interest, which neither she, nor the law, can take away? We rest upon the ground, that all his interest depends entirely upon hers; and if she had nothing, he has nothing.

The defendant objects that the plaintiffs must recover on the strength of their own title, and not on the weakness of the defendant's, and that they must have a legal title. The first proposition is true, and we do not see but that they are recovering on the strength of their own title; and without considering whether the second proposition is a correct one, it is sufficient to say, that they do stand on a legal title. Again: the defendant holds, that his right having become vested by the marriage, before he can be ejected or compelled to account for the rents and profits, it must be shown that he knew of a better outstanding title; and that the plaintiffs can recover only from the time the legal title vested in them, although the equitable title was in them long before. The answer to this is, the same as to some of the preceding points. He, having no right in an estate held by his wife in trust, there was no right or estate to vest in him, and none did vest. And it is a matter of every day's observation, that one is held accountable for the use of that which he honestly believed he owned, but which it appears he did not own. As to the time for which plaintiffs may claim the rents and profits, the verdict does not show for what time, the jury found; nor is there any instruction of the court before us, showing whether any, and what, position was taken by the court in relation thereto—so that the court is not informed for what time plaintiffs recovered. It is not an idle suggestion, to ask whether they might not recover for all the time the defendant was in possession within six years? The plaintiffs' *interest* in the estate was from the purchase of the widow, although they did not acquire legal title, till a later day. The rents and profits always belonged to them. If they belonged to them, they have a right of action for them. And then why not recover in this action, as well as in another? If they first acquired an *interest*, as well as a title, when the deed was made; the case would be different. But we do not adjudicate this. The

case of *Harker* v. *Witaker*, 5 Watts, 474, is one, where the plaintiffs seeking to recover *mesne* profits, were *creditors* only, and sought to recover for a time prior to their title under the levy. *Pulteney* v. *Warren*, 6 Ves. 73, does not aid us much, as it stands almost altogether upon its own circumstances. The correct abstract of that part of the case, bearing on this question, is, "account of rents and profits confined to the filing of the bill, filed upon the ground of equitable relief, against a mere adverse possession *without·fraud, &c.*" Finally, the defendant maintains, that the trust contended for, resulting from the operation of law, no declaration of it could be made under our statute; that it is a mere creature of equity, there to be ascertained and enforced; and that the matter of this action is not cognizable in a court of law, but that the plaintiffs should seek relief in equity. Section 1205 of the Code, certainly, does not forbid the declaration of a trust arising by operation of law. And the position, that as a trust is a creature of equity, therefore there is no place for these plaintiffs in a court of law, has no application here. If the trust remained a trust still, they would undoubtedly have to resort to equity to procure its enforcement. But if the trustee is willing to confess and execute his trust, what need is there of going into a court, either of equity or of law? And the trustee having executed it, no reason is seen why plaintiffs should not recover at law.

Having taken this view of the questions raised, and the law relating to them, this disposes of many of the errors assigned. All the material points raised by the demurrer, were made on the hearing also.

The second error assigned is, that the court overruled the defendant's challenge of the array of the petit jurors. The provisions of chapter 96 of the Code, are to be taken as directory. If the civil officers fail to perform their duty, they may be punished. But it is not intended by the statute, that the courts of justice should fail, because some county or township officer neglects his duty, in apportioning or drawing the general list of jurors for the year. *The People* v. *Supervisors of Chenango*, 4 Selden, 317. It was designed by sections

1647 and 1777 of the Code, that a court should not be without the power of obtaining a jury, and should not fail for the want of one. If there was an error in rejecting the first panel of jurors, the defendant does not, and probably cannot, complain of it. See *Suttle* v. *Batie, ante,* 141. The third and fourth assignment of errors relate to the instructions, said to have been given or refused. These instructions are not before us. The fifth, complains that mense profits were recovered for a period prior to the accruing of the legal title. This does not appear, as is before shown. The sixth and seventh, relate to the overruling the motion for a new trial and in arrest of judgment. These raise the same questions which are herein already decided.

Judgment affirmed.