WINGATE H. WOODLEY v. CHESLEY F. ADAMS.

(Case No. 1096.)

1. JUDGMENT.— A judgment was rendered in 1860 for a community debt against a surviving wife in her representative capacity, whose husband, dying in 1859, had by will appointed her his executrix, with a provision that no other action should be had in the county court concerning his estate than the probate and registration of his will and the return of inventory of the estate. That judgment was affirmed on appeal by the supreme court. Those entitled to the estate were never cited to give bond under the provisions of the act of 1848 (Hart. Dig., 1219), nor was a bond executed. Under that judgment execution was levied on community property, which was sold to satisfy it. In a suit by the heir against one claiming under the purchaser at that sale, *held*,

(1) The judgment was valid and binding in so far as it affected the property in controversy, and the heir was bound thereby.

(2) Her designation as *executrix* in the proceedings on which judgment was obtained was immaterial, since the pleadings disclosed that the suit was against her in her representative capacity, and that such capacity was that of survivor.

(3) The judgment being valid when rendered, the subsequent marriage of the widow would not have the effect of rendering the sale of the property made after her marriage, void, so as to subject it to attack in a collateral proceeding

APPEAL from Harrison.   Tried below before the Hon. A. J. Booty.

The case is sufficiently stated in the opinion.

*Geo. Lane* and *A. Pope*, for appellant.

I. The defendant Woodley had title to the land sued for. Act of 20th March, 1848, to regulate proceedings in the county court as to estates, etc., sec. 110; Hart. Dig., p. 359, art. 1219; act on same subject, 1862, January 1; Pasch. Dig., p. 335, art. 1371. The above act is also copied on this page of Paschal. Second section of the act of 11th of May, 1836, to organize the district courts, and define their powers and jurisdiction. Pasch. Dig., art. 1405, p. 343; sec. 10, art. 4, constitution of the state; Pasch. Dig., p. 57; section 3, art. 4, constitution of the state; Pasch. Dig., p. 55; act of 12th of May, 1846, jurisdiction of supreme court, sec. 3, art. 1562; Pasch. Dig., p. 384; act of 13th of March, 1848; Pasch. Dig., art. 1571. Manner of giving judgments in supreme court, and how same to be executed. Coffee *v.* Silvan, 15 Tex., 354; Riddle *v.* Rush, 27 Tex., 677; 2 Pasch. Dig., p. 1118, sec. 12724; Rorer on Judicial Sales, sec. 825, p. 325; Towns *v.* Harris, 13 Tex., 507; Finch *v.* Edmondson, 9 Tex., 504; Miller *v.* Miller, 10 Tex., 319; Jones *v.* Jones, 15 Tex., 149; Alexander *v.* Maverick, 18 Tex., 194; Withers *v.* Patterson, 27 Tex., 491; Milam County *v.* Robertson, 47 Tex., 222; 26 Am. Dec., 131, 163; Horan *v.* Wahrenberger, ·9 Tex., 313, and authorities therein stated, questioned in argument of appellant as authority for appellee; 322, 460, 272, 450; Freeman on Judg., 3d ed., sec. 132; 35 Cal., 528; 34 Cal., 391; 30 Conn., 190; 56 Me., 81; 22 Me., 128; 8 Reporter, 185; 25 Minn., 9.

[No briefs on file for appellee.]

STAYTON, ASSOCIATE JUSTICE.—This suit was brought by Chesley F. Adams to recover of Wingate H. Woodley an undivided one-half of a tract of land.

The appellee claimed the land by the will of his father, Chesley M. Adams, who died in 1859, at which time he

owned the land sued for, the same being community property owned by him and his wife, Martha Adams, who survived him.

The appellant claims the property by sale made of the same under an execution issued upon a judgment rendered against the executrix of the estate of the father of the appellee, rendered in 1860, for a community debt.

The evidence shows that the father of the appellee died in 1859, and that by his will Martha Adams, his wife, was appointed the executrix of his will, which provided, under the terms of the statute then in force, that no other action should be had in the county court in relation to his estate than the probate and registration of his will and the return of an inventory of his estate.   Hart. Dig., 1219.   The will was probated and the return of an inventory made in 1859.

In 1859, Thomas F. Swanson instituted a suit in the district court of Harrison county against the executrix, to recover $500 alleged to be due to him from the father of appellee, on account of a debt contracted during the marriage of the father and mother of the appellee.   In that suit a judgment was rendered in favor of Swanson against the executrix for $400, by consent, at the spring term of the court for the year 1860, upon which a stay of execution was given in the judgment until the 1st day of January thereafter.

A writ of error was sued out on the judgment above named, and the cause was brought to this court, which, on the 29th day of April, 1868, affirmed the judgment of the district court, with ten per cent. damages for delay. In the judgment rendered by this court it was adjudged that the defendant in error recover of the plaintiff in error, as the legal representative of C. M. Adams, deceased, and her sureties (who were named), the amount adjudged below with ten per cent. damages thereon, etc.

The mandate of the supreme court was filed in the dis-

trict court, and an execution was issued in the case on the 15th of September, 1868, which was levied upon the land in controversy, and the same was sold, and deed made to the persons under whom the appellant claims by regular transfer.

On the trial of the cause the court in effect charged the jury that the judgment rendered against the executrix, and the sale made thereunder, were void, and passed no title to the persons under whom the appellant claims.

This is assigned as error. It is claimed that the judgment rendered in favor of Swanson was void, for the reason that a suit could not be maintained by a creditor against the executrix, under the provisions of the act of 1848 (Hart. Dig., 1219), unless the heirs or persons entitled to the estate of C. M. Adams had been cited to give bond, and they had done so in accordance with the provisions of that law; it does not appear that this was done.

In the case of Hogue v. Sims, 9 Tex., 548, and in a number of decisions following that case, all of which were decided upon appeal or writ of error, it has been held that judgments rendered under facts similar to those found in this cause were erroneous; but none of the decisions referred to hold that such a judgment is absolutely void, and nothing but the most cogent reasons should induce us to so hold; especially so in causes like this, where the judgment which is the basis of the rights of the appellant was brought to this court for revision and was therein affirmed and rendered with damages for delay, against the legal representative of the estate of C. M. Adams, deceased, and her sureties.

The question in this cause arises in a collateral action; the property has passed into the hands of third parties for a valuable consideration, they relying upon the validity of the judgments; the district court had jurisdiction of the subject matter, and this court had jurisdiction of the appellate proceeding, and solemnly rendered a judg-

ment, after examination of all questions between the parties to the record, and upon that judgment rests the claim of the appellant. Under such facts it rests with the party who attacks such a judgment to show clearly that it is invalid.

That judgment was doubtless valid against the survivor, who was a party, and she is therein adjudged to be the legal representative of the estate; and it would not be a strained construction of that judgment to hold that it conclusively establishes, that, as survivor, she was the representative of the estate; her representative character as well as the existence and amount of the debt were subjects for the examination and adjudication of the courts, and ought to be presumed to have been examined and passed upon.

The only question that can arise in this case is, was Martha Adams the representative of the community estate of herself and her deceased husband in such sense that a judgment against her would be binding upon the appellee by virtue of that representation?

The line of decisions upon the act of 1848, which are above referred to, all had their origin prior to the act of 26th August, 1856 (Pasch. Dig., 4646–4652), under which the survivor was authorized to administer the community estate outside of the probate courts; and the effect of that act upon the former law as to community property and the right of the survivor to administer the same was not considered. By executing the bond provided for by the act of 1848, it was intended that the estate should pass into the hands of those entitled to it; and if it had been intended to apply to community estates, it would seem that the survivor would have been made a necessary party to the bond; but she was not so made by its terms; for only the persons *taking under the will and heirs* were required to make the bond, and it would be hard to believe that the persons taking under the will and the heirs

should be required to execute a bond for the value of property that would go to the survivor, freed from their control.

Whether the act of 1848 had any reference whatever to suits against the survivor of the community, to subject community property to the payment of community debts, may upon principle well be questioned, for it would seem from the close analogy to be found between the community rights and liabilities growing out of the marital relation, which is the ground-work of all community right, and that of an ordinary copartnership for commercial purposes, that suits by or against the survivor of either might be maintained without any statutory provision in regard thereto, for the purpose of subjecting the common property to the payment of such debts as such property is liable for; and that in the one case as in the other, judgments rendered in favor of or against the survivor would be as binding upon those claiming through the deceased member as though such heirs were parties to the record.

In both cases the survivor has an interest in, and lien upon, the common property for the payment of the common debts; in the one case such interest makes the surviving copartner the representative of the dissolved firm, and clothes him with power to sue and be sued in reference to matters affecting the settlement thereof; and judgments rendered in such cases, in the absence of fraud or some other ground deemed sufficient to authorize the setting of the same aside, are held binding upon the heirs of the deceased copartner; and the writer of this sees no reason why the same rule, in the absence of a statute to the contrary, should not prevail in settling the business of a community estate.

Until the community debts are paid the heirs have no real interest in the community property.

A full power to administer an estate, given by will or

otherwise, with liability to suit and power to sue, with all the incidental powers necessary to the enforcement or satisfaction of such judgments as might be rendered, either by execution or otherwise, as is provided by the act of January 1, 1862 (Pasch. Dig., 1371), which repealed the act of 1848, would doubtless extend to both the separate and community estate of a deceased person.

In the case of Carroll v. Carroll, 20 Tex., 731, the construction of the act of 20th March, 1848 (Hart. Dig., 1219), came up in a collateral matter. That suit had its origin prior to the act of 1856; the evidence in the case, as was remarked by Hemphill, C. J., was obscure, and we are unable to determine whether so much of the property, the subject-matter of that suit, as was affected by the act of 1848, was community property or not. It was indicated in that case that a sale made under a judgment rendered against executors under the act of 1848, when the provisions of that act had not been complied with, was void. Under the imperfect state of the record in that case, which was felt by the court, the executorship not being exclusively in the surviving widow, no consideration of the question we are now considering being had in the case, we are not prepared to regard it as a decision, that, under no state of case, and in regard to no class of property, would a judgment against an executor in possession of the property of an estate, who had qualified under the provisions of the act of 1848, be of any validity whatever, unless the heirs or persons who were entitled to the estate under the will had first been cited, and had then given bond as required by said act.

The act of 1856 was in force at the time of the death of C. M. Adams, the ancestor of the appellee, as it was when the suit in favor of Swanson against the executrix and surviving widow was instituted and judgment therein rendered.

That act (Pasch. Dig., 4647 et seq.) provided for the ad-

ministration of community estates by the survivor in a manner different from that provided for the administration of the separate estate of either party to the matrimonial union, and truly evidenced the propriety and the right of a survivor, as survivor, to administer the common estate.

Under that act, no power given by the will of the deceased member of the community was deemed necessary; and if such a will was made, it conferred upon the survivor, as she was named in the will, as executrix, in regard to the community estate, no right or power greater than the statute gave.

If the execution and probate of the will under the act of 1848 gave only the restricted power which is claimed for it by the appellee over the separate estate, even then if it gave a like power over the community estate, it certainly was not intended to have the effect of divesting the survivor of her rights and powers as survivor under the act of 1856, which is full and complete in its provisions, and looks to an inexpensive, speedy and complete administration of the community estate. All that it was necessary for Mrs. Adams to do, under the act of 1856, to qualify her to administer the common estate, was, in so far as real estate was concerned, to return an inventory into the probate court. Cordier v. Cage, 44 Tex., 533. Her power did not depend upon any order of the probate court, nor upon the heir doing or failing to do any act, except that in the event of her mismanagement the persons entitled to the estate, or creditors, could arrest the administration, unless the survivor gave bond. In the inception of such an administration, neither oath or bond was required of the survivor; her interest in the estate and liability for its debts being deemed a sufficient security for the proper management of the estate.

The act of 1856 being in force at the time of the death of C. M. Adams, his widow, by filing the inventory of

his estate, as she did, would have been fully empowered to administer the property in controversy; for it was community property. She would have been capable, as survivor, of defending and fully representing the community estate in the suit brought by Swanson; for that suit was brought to enforce the payment of a community debt, without reference to the powers conferred upon her by the will of her husband.

It does not appear that the survivor was ever required by the probate court, upon its own motion, or upon the motion of any person interested in the estate, to execute a bond.

To administer the separate estate of her husband, as an independent executrix, it was necessary that Mrs. Adams should be empowered by the will of her husband so to do; and if at the time of his death, by the law then in force, a suit could not be brought against such executrix to enforce the payment of a separate debt, by subjecting his separate estate to sale for the payment thereof, unless she was in possession of the estate, after the heirs or persons entitled to the estate had given the bond required by the act of 1848, yet it does not follow that the same rule should prevail in reference to the community estate and community debts which were controlled by the act of 1856. Nor does it follow that, under the laws in force at the time the judgment in favor of Swanson was rendered, Mrs. Adams should have been fully qualified to act as the legal representative of both the separate and community estates of her husband, in order to have authority and power to represent one of said estates; for the law was then in force regulating the administration of a community estate by the survivor, as was the law regulating an independent executorship provided for by the will of the husband under the act of 1848. These laws were not inconsistent; they related to a different subject-matter; the power might exist as to the one estate

without existing as to the other, or it might exist as to both estates at the same time.

A compliance with the act of 1856 gave to the survivor the power of full representation of the community estate.

A compliance with the provisions of the act of 1848 gave to the executrix named full power to represent whatever estate was contemplated thereby; but a failure to comply with that act did not have the effect of divesting the power given by the act of 1856 over the community estate.

To hold that the will of C. M. Adams prevented his survivor from qualifying under the act of 1856, would be in effect to hold that an individual by his own act could repeal a law; for the right of the survivor to administer the community estate is not made to depend upon the will of the deceased member.

By the return of an inventory, Mrs. Adams, in the absence of an order of the probate court requiring her to give bond, became the legal representative of the community estate of herself and deceased husband for every purpose; and at the same time it may be true, that, under the will of her husband, she would not have been empowered, by simply returning an inventory, to defend suits based upon the separate debts of her husband, by which his separate estate would have been subjected to sale.

We therefore hold that the judgment rendered against Mrs. Adams was valid and binding in so far as it affects the property in controversy, and that the appellee is bound by her representation.

That she was sued as executrix is immaterial under the facts of this case; for the facts contained in the pleadings evidenced that she was sued in her representative capacity, and that such capacity was that of survivor.

The judgment in favor of Swanson was valid when rendered, and her subsequent marriage would not have had the

effect of rendering a sale of the property after her marriage void. It would have been, at most, only voidable, and no objection could be set up to it in this collateral action. The sale is not, however, believed to be voidable; for before the judgment in the supreme court was rendered, under the act of January 1, 1862 (Pasch. Dig., 1371), as executrix under the will of her husband she was fully empowered to represent all of his estate, whether separate or community, and execution could issue.

There are many other assignments of error contained in the record, all of which have been presented by counsel in their briefs very fully, but it is not believed necessary to consider the same, as the decision of the question raised by the assignment already considered is believed to be decisive of the case.

For the error of the court pointed out in the assignment herein considered, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 20, 1881.]

Without either assenting to, or dissenting from, all the views expressed in the above opinion, we concur in the result reached.

ROBERT S. GOULD, Chief Justice.

M. H. BONNER, Associate Justice.