## JOHN H. WOOD ET AL. V. VINCENZO MISTRETTA.

### Decided January 28, 1899.

**1. Jurisdiction of Probate Court—Presumption.**

Probate proceedings of nearly forty years standing will not be disturbed on the ground that the court was without jurisdiction of the will, which provided that no action be had further than its probate and the filing of an inventory, since, after such a lapse of time, it will be presumed that the heirs failed to take the necessary steps to keep the estate out of court by giving bond to pay the testator's debts to the extent of the estate. Probate Act of 1848, sec. 110.

**2. Same—Correcting Mistake—Independent Suit.**

The provision in the probate act of 1870 to the effect that in cases transferred thereunder from the county court to the district court the proceedings had in the county court might be revised by motion in the district court, is not exclusive, and will not prevent the correction by an independent suit in the district court of a mistake in the sale of a land certificate by an executor of an estate transferred under that act.

**3. Parties—Correction of Mistake in Probate Proceedings.**

A decree correcting an error in the probate sale of a land certificate is not invalid as to heirs who were not made parties as required by section 229 of the probate act of 1870, when title to the land is being tried, as the proceeding is rather one in equity to correct a mistake in furtherance of administration.

**4. Limitation of Five Years—Deed of Land Certificate.**

An executor's deed of a land certificate made by order of the probate court is a deed of land within the five years statute of limitations, where, although the granting clause conveyed only the certificate, the land had then been located and patented, and the tenendum and habendum clauses included "the appurtenances thereto belonging, and all and every right of location and patent by virtue" thereof, and the deed adopted the recitals in the order of sale, which was attached to it and recorded with it, and which covered both the certificate and the land patented.

**5. Limitation—Filing Petition Without Citation.**

To interrupt the running of the statute of limitations by suit, it is not sufficient to file a petition with the clerk with direction to hold up the issuance of citation thereon.

**6. Judgment Against Independent Executor Binding on Heirs Not Made Parties.**

The heirs and devisees of a testator whose will provided for administration independently of the probate court are bound by a judgment entered in 1871 against the independent executor in an action involving the estate's title to certain real property, notwithstanding that they were not made parties thereto.

APPEAL from Jones. Tried below before Hon. T. H. CONNER.

*C. C. Terrell* and *Beasley & Flournoy,* for appellant Wood.

*C. H. Steele* and *W. J. Gray,* for appellees McGloin and Miller.

STEPHENS, ASSOCIATE JUSTICE.—The league of land involved in this suit, situated in what is now Jones County, was patented May 30, 1856 to John McMullen and James McGloin, as recited therein, "by virtue of certificate issued in accordance with a decree of the District Court of Travis County rendered at its fall term, 1850." The patent described it as "one league of land in Bexar County, on the waters of the Double Mountain Fork of the Brazos River," giving also the field notes.

Under the decree referred to of the District Court of Travis County, which was rendered October 22, 1850, six premium certificates were issued to McMullen and McGloin as empresarios, numbered 1, 2, 3, 4, 5, and 6,—4 being the number of the certificate included within this patent as appears from the records of the General Land Office, though not from the face of the patent. No. 3 was located adjacent to No. 4, and was patented to John Sayles, assignee, on the same day that No. 4 was patented, it being also a league certificate.

By transfer made August 7, 1844, John McMullen had already conveyed his interest in these certificates to James McGloin, who died soon after the patents were issued, leaving a will, which was probated September 24, 1856, in San Patricio County, the place of his residence and death. This will, besides certain specific bequests which need not be noticed, directed that after the payment of debts, expenses, etc., the residue of the estate (including the land in controversy) be divided in named proportions between the five children of the testator. Gilbert McGloin and Pat O'Docharty were named as executors of the will, and were relieved from giving bond as such. The will contained the further direction that no action be had in the probate court other than the probating of the will and the receiving and recording an inventory of the estate. The executors, however, qualified by taking the oath and giving bond, and proceeded to administer the estate under the orders of the probate court.

At the June term, 1861, of said court, in order to meet the expenses of administration and pay taxes, O'Docharty, the other executor having died, applied for and obtained an order to sell, as described in the application, "a land certificate now located upon the Double Mountain Fork of the Brazos River." The sale in pursuance of the order was made to John W. Vineyard for $500, and confirmed, the property being described in the report of the sale as "one land certificate No. 3, issued by the District Court of Travis County to John McMullen and James McGloin for one league of premium land." By deed dated December 30, 1861, John W. Vineyard, for a cash consideration of $920, conveyed the same property to John H. Wood, the defendant below and appellant here, describing it as it was described in the report of the sale, and further describing it as "being the same deeded to me by Pat O'Docharty, executor of James McGloin, deceased, on the 3d day of October, 1861."

In addition to the above, the transcript from the probate court of San Patricio County showed that James McGloin left a large estate; that various claims were proved up against it; that considerable expense attended its administration; that various orders of sale to pay debts were

applied for and obtained from time to time; that O'Docharty continued to be executor of the estate till the February term, 1872, when he was removed and an administrator de bonis non appointed; and that unpaid debts still remained, and the administration continued yet many years.

In connection with the foregoing, appellant Wood introduced the following important testimony, both to show a superior title in himself and also as a basis for his defense of five years' limitation:

"The original deed from Patrick O'Docharty, as executor of the will of James McGloin, deceased to John H. Wood. This deed is not dated, but is properly authenticated for record March 27, 1871. The deed was duly registered in Palo Pinto County, June 29, 1875, and in Jones County, November 20, 1891, and was filed among the papers of the cause and three days' notice thereof duly given. This instrument recites that it was made in accordance with a decree of the District Court of Nueces County, Texas, in the suit of John H. Wood v. Patrick O'Docharty, executor estate of James McGloin, deceased, as will more fully appear by reference to a certified copy of the same issued by the clerk of said court and hereto attached and made a part of these presents.

"The deed further recites that Wood had complied with the conditions imposed upon him by the judgment; that the granting and habendum clauses of said deed are as follows: 'I, Patrick O'Docharty, executor of the last will and testament of Jas. McGloin, deceased, have bargained, sold, and conveyed, and hereby do bargain, sell, convey, assign, transfer, and confirm unto the said John H. Wood one certain land certificate designated by the number four (4) and issued by the District Court of Travis County, Texas, to John McMullen and James McGloin, being for one league of premium lands, and which certificate was by said John McMullen, with others, sold and assigned to my testator during his lifetime by deed of conveyance extant upon the records of San Patricio County, in Book B, folio 1866-1868, the same having been executed August 7, 1844, and recorded April 27, 1851, as will appear by the records of said county. To have and to hold the said league land certificate number four (4), with all and singular the rights, members, and appurtenances thereto belonging, and with all and every right of location and patent by virtue of the same, unto John H. Wood, his heirs and assigns forever.' This deed is signed thus: 'Pat O'Docharty.'

"Attached to this deed is a certified copy of the judgment rendered by the District Court of Nueces County, Texas, the instrument recites as rendered by said court at a regular term thereof: 'This cause being submitted to the court upon the pleadings and the evidence adduced, it appearing that the deed of conveyance and assignment of land certificate number three (3) in the name of John McMullen and James McGloin for one league of land made by said defendant to J. W. Vineyard, of whom plaintiff is the assignee, by virtue of an order and decree of confirmation of sale rendered by the chief justice of San Patricio County, sitting in matters of probate, September 30, 1861, was erroneous in the

description of such certificate and conceived in mistake in this, that it should have been and was intended to be land certificate numbered and designated four (4) in place of the one thus designated and sold as number three (3). It is ordered, adjudged, and decreed by the court that said error and mistake be and the same is hereby corrected; that the deed of conveyance and assignment to land certificate No. 3 be set aside and declared null and void and of no force and effect whatsoever, and that upon the surrender of the same as such by plaintiff to the defendant Pat O'Docharty, Esq., this defendant, as executor of the last will and testament of Jas. McGloin, deceased, be and he is authorized, directed, and required to execute and deliver to the plaintiff, assignee of J. W. Vincyard, the original purchaser in the place and stead of the original deed of conveyance and assignment of said certificate No. 3, a good and valid deed of conveyance and assignment to land certificate number four (4) for one league of land granted by decree of the District Court of Travis County, October 22, 1850, to John McMullen and James McGloin, and to the latter by the former assigned, April 7, 1854, [August 7, 1844,] by deed of assignment extant upon the records of San Patricio County in Book B, folio 67-68, and granting and conveying to the plaintiff all and every right, title, and interest of the estate of said James McGloin, deceased, which at any time such estate had or now have and hold in the said land certificate No. 4, or in and to any land that may have been surveyed, located or patented by reason and in virtue of such certificate.'

"That said decree is attached to and is a part of said deed, and was recorded therewith in both Palo Pinto and Jones counties, as aforesaid."

At the February term, 1871, of the Probate Court of San Patricio County, the above quoted decree was entered in the minutes of that court.

The validity of the title so acquired by Wood was controverted in the trial court, and is controverted here, by a portion of the heirs and devisees of James McGloin and Elizabeth McGloin, deceased, mainly upon the ground that the probate court of San Patricio County was without jurisdiction to administer the estate of James McGloin in view of the provision in his will providing against such administration. Counsel for appellant in an elaborate and carefully prepared brief endeavor upon various grounds to avoid this contention rather than to meet it, overlooking, perhaps, the 110th section of the probate act of 1848 and the decisions of our Supreme Court construing it. Nevertheless, as the question is necessarily involved in the case, it becomes our duty to consider it.

That section may be found in the third volume, page 275, of the Laws of Texas, now being republished by the Gammel Book Company, and in Hartley's Digest, article 1219, and in Oldham & White, article 822. The following note to article 822, in Oldham & White, states the distinguishing feature of the probate act of 1848 as embodied in its 110th section: "A provision in the will and the assent of the heirs are both necessary to take the administration of the estate out of the probate

court. Unless the heirs comply with the provisions of the statute, the estate must be settled under the directions of the chief justice, as in other cases. Hogue, Exr., v. Sims, 9 Texas, 546." This was reaffirmed in Carroll v. Carroll, 20 Texas, 732; Wood v. McMeans, 23 Texas, 481; Shaw v. Ellison, 24 Texas, 198; Runnels v. Kownslar, 27 Texas, 528.

True, all these cases, with one exception to be noticed below, were suits by creditors, but if it should be maintained that section 110 of the probate act of 1848 only applies where there are creditors of the testator, and where one of them requires those entitled to the estate to give bond as therein provided, still it should be presumed, we think, from the facts disclosd by this record, in support of a jurisdiction so long and continuously exercised for thirty years or more, that the conditions existed which warranted the administration of the estate in court. There were undoubtedly many creditors of the estate, the executors gave bond and proceeded in the regular way, and the devisees, it is to be inferred, elected not to give the bond required by the act of 1848, the probate proceedings as copied in the record here being silent on that subject. They seem to have acquiesced in the course pursued, and accepted benefits arising therefrom. The will did not of itself necessarily exclude the jurisdiction of the probate court, and in the absence of proof that the conditions existed which gave it that effect, we think it should be presumed, in support of probate proceedings of thirty or forty years' standing, that those interested in keeping the estate out of the probate court failed to do what was or may have been required of them in the accomplishment of that result. Had the executors administered the estate independent of the probate court, a contrary presumption might be indulged in support of a judgment against them as independent executors, as seems to have been implied in Woodley v. Adams, 55 Texas, 532.

In one of the cases above cited, however—Carroll v. Carroll, 20 Texas, 732—a sale made under execution against an independent executor was held to be void because it did not appear that those entitled to the estate under the will had elected, by giving the bond required by the law of 1848, to avail themselves of the provision in the will taking the administration out of the probate court. But see the opinion of Justice Stayton in the case last cited.

In accordance with the construction given the probate law of 1848 by these decisions, we overrule the contention that the probate court of San Patricio County was shown by the terms of the will merely to have been without jurisdiction to administer the estate of James McGloin.

As this administration was still pending when the probate law of 1870 was approved, August 15, 1870, all proceedings in relation to the settlement of the McGloin estate were, by section 304 of that act, transferred from the county to the district court; that section further providing that "proceedings heretofore had in the county courts in matters of probate may be revised by motion in the district court, specifying the errors or irregularities sought to be corrected, giving ten days' notice thereof to the party or parties adversely interested."

It thus appears that the correction of the mistake made in the probate sale of certificate No. 3 instead of 4 might have been made by motion in the District Court, to which the proceedings had been transferred. But we see no reason why it might not also have been made, as was done by regular suit in the District Court, especially as the result of the correction so made seems to have been accepted and approved by the probate court.

It was not a suit to contest the title of the estate to land within the meaning of section 229 of the probate act of 1870, reading: "If any person desires to contest the title of the estate to land, he must bring his suit in the district court and make the executor or administrator and the heirs parties thereto." Pasch. Dig., art. 5697. It was rather a suit in equity to correct a mistake, in furtherance of the administration. The clause already quoted from section 304 of that act shows that the Legislature recognized the distinction between a proceeding to correct a mistake and a suit to contest title.

The probate sale so corrected was not the sale merely of a land certificate, but included its location, "upon the Double Mountain Fork of the Brazos River," and was therefore a sale of the land itself, which distinguishes this case from East v. Dugan, 79 Texas, 329. The decree of the District Court, which was made a part of the executor's deed, described the property really sold by the executor under the order of the probate court, not only as the "right, title, and interest of the estate of the said James McGloin, deceased * * * in the said land certificate No. 4," but also "to any land that may have been surveyed, located, or patented by reason and in virtue of said certificate."

But if we adopt the theory upon which the case seems to have been briefed on both sides, that is, that the will of James McGloin of itself ousted the probate court of jurisdiction to administer the estate, and treat the suit of Wood against the independent executor as a suit to contest the title of the estate to the land located and patented by virtue of certificate No. 4, we would still have to overrule the contention that because the devisees were not made parties to that suit the decree rendered therein did not affect them. It was not until the probate law of 1870 was enacted that it became necessary to make the heirs of devisees parties to a suit to recover land from even a regular administrator or executor, as was expressly decided in Lawson v. Kelley, 82 Texas, 457; and clearly, unless that act made them so, they were not necessary parties defendant to such a suit when brought against an independent executor acting without the jurisdiction of the probate court. Indeed, it would seem to require a positive legislative enactment to make them necessary parties in such case, since an independent executor administering an estate out of court would seem to fall within the exceptions to the rule rather than within the rule itself which requires the beneficiaries as well as the trustee to be made parties. Ebell v. Bursinger, 70 Texas, 120; Hardware Co. v. Stove Mfg. Co., 88 Texas, 468.

At any rate, it was the law in Texas when the probate act of 1870 was passed that it was not necessary to make the heirs or devisees parties to a suit against an independent executor to recover from him property, real or personal, belonging to the estate, and that act did not change the law in this respect, for though section 229 thereof, quoted above, made a change in the law so far as suits against administrators and executors of estates administered in the probate court were concerned, section 160 of the same act provided that other provisions of the act, including those of section 229, should not apply to an estate administered by an independent executor, adding: "But the same shall become like any other property to be administered under a power, chargeable in the hands of a trustee, and liable to execution in any court having jurisdiction," thus leaving the law in that respect as it aforetime was.

We need not, therefore, decide the further question so much discussed in the briefs and arguments, whether the deed of O'Docharty, treated as that of an independent executor to Wood, should share the fate of the decree and probate proceedings in pursuance of which it was made, or whether, if these be adjudged null and void, it would still have dispositive effect as the deed of an independent executor, the same as if no such proceedings had been had.

If, however, we be mistaken in all the views above expressed, and if for any reason the deed from the executor to Wood passed no title to him, we are yet of the opinion that it was a deed to land within the meaning of the five years' statute of limitation. True, it purports in the granting clause to convey only a land certificate, but this certificate had then been both located and patented, the tenendum and habendum clause included the "appurtenances thereto belonging" and "all and every right of location and patent by virtue of the same," and the deed adopted as a part of it the recitals in the decree attached to it and recorded with it, which covered both the certificate and the land patented under it. The certificate was so described as that it might not only be identified by reference to the records referred to, but also that those claiming under the patent might know from the records in the General Land Office upon which the patent issued, and of which they were bound to take notice, that the deed imported an adverse claim to the land so patented.

The limitation defense was in other respects complete, unless the period of adverse possession was interrupted by the institution of suit before the expiration of five years. This possession began about the middle of January, 1892. Interveners below, appellees here, filed their original petition, in vacation, December 21, 1896, but directed the clerk to hold up citation, and in consequence thereof none was issued until the 20th day of March, 1897. The evidence admitted of no other finding upon this point. True, the original plaintiff in the suit, Vincenzo Mistretta, had first filed a petition, and as early as December 7, 1895, but no citation was served on appellant before April, 1897. Mistretta seems to have claimed under the interveners, and having been denied any recovery, failed to perfect any appeal or to file cross-assignments of

error. We think, then, his connection with the case in no way affects the limitation defense.

In Ricker v. Shoemaker, 81 Texas, 28, Justice Gaines announced the following rule: "All the elementary writers agree that in order to stop the running of the statute of limitations by suit, not only must the initial step required by the statute be taken, but there must also be a bona fide intention that the process shall be served at once upon the defendant. Busw. on Lim., sec. 355; Wood on Lim., sec. 289; Angell on Lim., sec. 312. And such is practically the ruling in this court. Veramendi v. Hutchins, 48 Texas, 532." Tested by this rule, the limitation defense was complete.

For these several reasons, the judgment in favor of appellees, interveners below, is reversed and here rendered in favor of appellant Wood for the western two-thirds of the league claimed by him, and all costs. The judgment in other respects will not be disturbed.

*Reversed and rendered in part.*
*Affirmed in part.*

### ON MOTION FOR REHEARING.

It is earnestly insisted in support of this motion that "the uncontradicted evidence in this case shows that the probate court of San Patricio County, Texas, had no jurisdiction to administer the estate of James McGloin, deceased," and conseqeuntly that there was no room for the presumption to the contrary as indicated in the opinion already filed.

It appears from the statement of facts that the deposition of the clerk of that court was taken, appended to which was an exhibit termed "Exhibit No. 1," certified to contain "a true and correct copy of all the orders and proceedings in the probate court of San Patricio County with reference to the estate of James McGloin, deceased, as the same appeared on the minutes of the said court." This exhibit, comprising 174 pages and covering the period of time from 1856 to 1893, seems to have been introduced in evidence on the trial below, but is evidently not all included in the transcript brought here, which, in setting forth the substance of its contents, contains the following recital: "This instrument, said exhibit No. 1, contains following among other things," thereby indicating that some portions were omitted. The contents as thus epitomized in the statement of facts indicate that the devisees recognized the authority of the probate court to administer the estate, and that no effort was made on their part to withdraw it from such administration.

It is, however, contended that if any creditor had filed a complaint against the devisees, requiring them to give bond as provided in the 110th section of the probate law of 1848, it should have appeared in said exhibit No. 1; but as the entire exhibit does not seem to be included within the statement of facts, we can not say that no such complaint had been made, if, indeed, it was required in order to give the probate court jurisdiction. Nor are we to be understood as holding that such complaint

should appear in a complete transcript of the proceedings affecting the administration of the McGloin estate in the probate court "as the same appeared on the minutes of said court." See section 122 of the act, Sayles' Early Laws, vol. 2, p. 194. Indeed, as the object thereof would be to prevent an administration out of court without bond, we would hardly expect to find such complaint within the proceedings of a regular administration in court.

But, however this may be, if we should adopt the view so persistently urged, and in support of which Pierce v. Wallace, 48 Texas, 401, and other cases less in point are cited, that the language of the will, in the absence of a showing that the heirs or devisees had been required by the creditors to give the bond as provided in the 110th section of the probate law of 1848 and failed to do so, had the effect of withdarwing the estate from the jurisdiction of the probate court, we would still be required to to hold, for the reasons given in the former opinion, that the heirs and devisees of James McGloin, though not parties to the suit in the District Court against the independent executor, would be bound by the judgment rendered in that action, as well as barred by the statute of limitations.

The rehearing will consequently be denied.

*Motion denied.*

Writ of error refused.