## O. B. Wingfield et al. v. H. C. Hackney et al.

### No. 1107. Decided May 22, 1902.

**1.—Pleading—Injunction—Conclusion of Law.**

Pleadings which allege all the facts upon which plaintiff's right to relief by injunction arises are sufficient without setting forth the conclusions of law following from such facts. (P. 494.)

**2.—Same—Case Stated.**

A surviving wife who had qualified as survivor of the community estate, and had married again, joined by her second husband and the heirs of the first, sued to enjoin the sale under execution, upon a judgment obtained against her as such survivor administering the community estate under bond, of property which she claimed was her separate estate and the business homestead of herself and her first husband, and therefore not subject to the execution. Held, that such pleadings were sufficient to raise the question of the right to injunction on the ground that the second marriage had terminated the community administration by her as surviving wife and the right to sell on execution against her as such administratrix of the community. (Pp. 491-494.)

**3.—Community Property—Administration by Surviving Wife—Marriage—Execution.**

The marriage of a surviving wife administering, under bond, the community estate, terminated such administration by the survivor, and, with it, the right to sell community property under execution on a judgment obtained against her as survivor before her second marriage; the creditor must resort to regular administration, and his sale under execution could be enjoined. Rev. Stats., arts. 2227, 2236, 2237. (Pp. 494, 495.)

**4.—Survivor of Community—Death—Execution—Injunction—Parties.**

Where the survivor of a community estate, after contracting a second marriage, sued to enjoin the sale, on a judgment obtained against her as such survivor, of property claimed to be her separate estate and the business homestead of herself and her first husband, being joined in the suit by her second husband and the heirs of herself and the first, on her death the remaining parties were entitled to prosecute to judgment the suit for injunction. (P. 495.)

**5.—Cases Discussed.**

Davis v. McCartney, 64 Texas, 584, and Pucket v. Johnson, 45 Texas, 550, followed. Woodley v. Adams, 55 Texas, 535, limited. (P. 495.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Freestone County.

*George A. Bell* and *Gibson & Bryant,* for appellant.—Where the surviving wife qualifies and takes possession of the community property and subsequently marries again, she at once ceases to have any further control or management of the estate, and same becomes subject to administration as in other cases of deceased persons' estates. Rev. Stats., arts. 2236, 2237; Tucker v. Brackett, 28 Texas, 340; Davis v. McCartney, 64 Texas, 588; Auerbach v. Wylie, 19 S. W. Rep., 856.

After the surviving wife, who has administered on the community property, remarries, a judgment against her as survivor can only be enforced through a regular administration in the probate court.

The court erred in not giving judgment for plaintiffs perpetuating the injunction, because the record shows that at the time of the trial in the court below Mrs. O. B. Wingfield was dead, and there was no one

representing her estate or that of A. M. Stubbs, or that of the community estate of herself and A. M. Stubbs, deceased.

WILLIAMS, ASSOCIATE JUSTICE.—The following statement and questions are certified for decision by the Court of Civil Appeals for the Fifth District:

"A. M. Stubbs and wife resided with their minor children at Wortham, Texas. Mr. and Mrs. Stubbs owned, in community, three lots situated in said town. One of the lots constituted the residence homestead. The other two lots were business properties. Stubbs was engaged in the family grocery business, and also in the livery business; one of said lots being devoted to the former, and the other two to the latter business. The lots were disconnected and the two businesses were independent, separate, and distinct. Stubbs died intestate in March, 1897, and Mrs. Stubbs promptly qualified as survivor of the community estate. She claimed that the family grocery lot was paid for with her separate means, and was therefore her separate property, and for that reason did not inventory said lot. She continued both of said businesses. Stubbs and wife owed a community debt to H. C. Hackney, who brought a suit thereon against Mrs. Stubbs, as survivor, and obtained a judgment for $264.80. Subsequently, in 1899, Mrs. Stubbs married A. N. Wingfield. Thereafter, in March, 1901, Hackney caused execution to be issued on said judgment, and had said writ levied by the sheriff of the county upon the family grocery lot. Thereupon Mrs. Wingfield, formerly Stubbs, joined by her husband and the minor children of herself and Stubbs, who sued by their next friend, A. N. Wingfield, brought suit in the District Court of Freestone County against Hackney and the said sheriff to enjoin the sale of the said lot under the levy aforesaid. It was alleged in the petition that while Mr. and Mrs. Stubbs lived together as husband and wife, one Dunagan deeded the said lot to Mrs. Stubbs. The petition then proceeded as follows: 'That the consideration paid and to be paid for said property was ($600) six hundred dollars, all of which was paid by said O. B. Stubbs, the wife, out of her separate means, and the title to the property vested in her own separate right, and became and has ever since remained, and is now her separate property. * * * Plaintiff further shows to the court that at and before the death of said A. M. Stubbs, he was a merchant and the head of a family, consisting of plaintiff and the four minor children aforesaid. * * * That at and before the death of the said A. M. Stubbs, he occupied a house situated on the land belonging to the said O. B. Wingfield, before described, and carried on therein the business of the head of the family, whereby the same became and was prior to and at the death of the said A. M. Stubbs, his business homestead, and same descended and vested in his heirs at law, free from the debts of the said A. M. Stubbs, and of the community debts of the plaintiff and the said A. M. Stubbs.' The qualification of Mrs. Stubbs as survivor, and the obtention of the judgment by Hackney was then alleged. The petition further proceeded as follows: 'That

on the 28th day of March, 1901, the defendant H. C. Hackney, caused an execution to be issued on said judgment against the plaintiff, O. B. Wingfield, as such administratrix (who after the death of A. M. Stubbs was intermarried with her coplaintiff, A. N. Wingfield), which execution was placed in the hands of the defendant, J. F. Roper (the sheriff), and has by him been levied on the property so purchased by her from said Dunagan and wife. That said Roper has advertised said property to be sold on the first Tuesday in May, 1901, and same will be by him sold, unless he is restrained from doing so by the order of the court. That if such sale is made it will cast a perpetual cloud on plaintiff's title, and greatly damage the value of said property, and plaintiffs will thereby suffer great and irreparable injury. That they have no adequate remedy at law; wherefore plaintiffs pray that your honor make an order directing the clerk of the District Court of Freestone County, Texas, to issue an injunction restraining the defendants from making said sale. That they be cited to answer this petition, and on final hearing that said property be adjudged to be her separate property. Or, in case the facts show that all or any part of said property is not the separate property of plaintiff, O. B. Wingfield, but all or a part thereof was community property of herself and said A. M. Stubbs, deceased, that the court adjudge same to have been the business homestead of said A. M. Stubbs at the time of his death, and not subject to his debts. That the defendants be perpetually enjoined from selling said property by virtue of said execution, and for the costs of suit and such further relief, legal and equitable, general and special, as the facts will warrant.' A temporary injunction was granted, issued and served.

"The defendants answered by general denial, and pleaded specially that the lot in controversy was the community property of Stubbs and wife; that their claim that the same was the separate property of Mrs. Stubbs was made for the purpose of defrauding their creditors; that Stubbs, in his lifetime, and Mrs. Stubbs, after his death, claimed the livery lot as the business homestead, and that Mrs. Stubbs continued to conduct the livery business thereon after the death of her husband, and by her said claim and conduct exempted said livery lot from seizure by creditors, and made the same the business homestead. Mrs. Wingfield having died intestate, the other plaintiffs filed a plea, reading as follows: 'And now come the plaintiffs other than the original plaintiff, O. B. Wingfield, and show to the court that since the institution of this suit the said O. B. Wingfield departed this life intestate. That the plaintiff, A. N. Wingfield, and Maggie Stubbs, Charles Stubbs, Willie Stubbs, and Walter Stubbs, who are minors, and who prosecute this suit by and through their next friend, A. N. Wingfield, are the only heirs at law of of the said O. B. Wingfield, now deceased, and they now here adopt and reiterate all the allegations contained in their original petition, and pray for all the judgments and relief claimed in said original petition; and will ever pray, etc.' There was never any administration upon the estate of either A. M. Stubbs or his said wife, afterwards Mrs.

Wingfield, except by Mrs. Stubbs as survivor of the community. The case was tried before the court without a jury, and a decree entered dissolving the preliminary injunction and refusing the relief sought. The plaintiffs have appealed.

"The trial judge filed conclusions of fact, which read thus: 'The plaintiff suing to enjoin the sale on execution issued on a judgment duly obtained by defendant, H. C. Hackney, against O. B. Wingfield (then Stubbs), as qualified survivor of the marital community of A. M. and O. B. Stubbs, of certain house and lot in Wortham, claim the same as the separate property of O. B. Wingfield, and failing that claim, as the business homestead of A. M. Stubbs, head of the family of herself and plaintiffs, excepting A. N. Wingfield, at the time of the death of A. M. Stubbs. The said A. M. Stubbs, then husband of the plaintiff, O. B. Wingfield, and father, by her, of the said minor plaintiffs, died in 1897, owning the property in suit, in which he was conducting the business of a retail grocery merchant, and another lot in Wortham, separated from this, whereon was a livery stable, in which he was conducting the business of a liveryman, and on which there was also a storehouse then used for storing stuff for use in said livery business.

"'After the death of A. M. Stubbs, his widow qualified as survivor under the statute and inventoried the livery property as the exempt business homestead of the family, and omitted the property in suit from her inventory, claiming the same as her separate property.

"'At the death of said A. M. Stubbs, his livery property (the lot and house) was more valuable than the grocery storehouse here in suit. The house in suit was not the separate property of said widow, but was, as was also the livery property, the community property of A. M. and O. B. Stubbs.'

"The evidence is sufficient to justify the said conclusions of fact, and the same are adopted by this court.

"Among the assignments of error presented and relied on by appellants are the following: 'Sixth. The court erred in not giving judgment for plaintiffs perpetuating the injunction, because the undisputed facts show that at the time the execution sought to be enjoined was issued and levied, the plaintiff, Mrs. O. B. Stubbs, had intermarried with her coplaintiff, A. N. Wingfield, and had ceased to have any authority or control over the community estate of A. M. and O. B. Stubbs, and the probate court alone had authority, under a regular administration, to enforce the collection of appellee's (H. C. Hackney's) claim.

"'Seventh. The court erred in not giving judgment for plaintiffs perpetuating the injunction, because the record shows that at the time of the trial in the court below Mrs. O. B. Wingfield was dead, and there was no one representing her estate, or that of A. M. Stubbs, or that of the community estate of herself and A. M. Stubbs, deceased.'

"Question 1. Do the pleadings of appellants raise the issues presented by the said assignments of error, and should the assignments be considered and passed upon by this court?

"Question 2. After the marriage of Mrs. Stubbs to Wingfield, was the appellee, Hackney, entitled to the collection of his said judgment by execution, as he attempted to do?

"Question 3. Were Mrs. Wingfield and the heirs of A. M. Stubbs, and, after the death of Mrs. Wingfield, the heirs of herself and her deceased husband, entitled to injunction to restrain the sale under execution of the lot levied on by Hackney?

"If the first question propounded is answered in the negative, the answers to the remaining questions are not necessary to a decision of the case."

1. The first question is answered in the affirmative. The facts upon which the questions of law presented by the assignments arise were stated in the pleadings, with a prayer that defendants be perpetually enjoined from selling the property by virtue of the execution. The contention of appellants is only a legal conclusion from those facts. The case could not be properly disposed of without a decision of the questions.

2. The second question is answered in the negative.

By article 2236, Revised Statutes, the widow, after qualifying in the prescribed manner, is allowed to "retain the exclusive management, control, and disposition of the community property of herself and deceased husband in the same manner, and subject to the same rights, rules, and regulations as provided in the case of the husband, until she shall * * * marry again."

By article 2227 it is provided that the husband, when he has complied with the preceding requirements, "without further action of the county court, shall have the right to control, manage, and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate; and of suing and being sued in regard to the same, in the same manner as during the lifetime of the deceased."

It is this control and amenability to suit which has been construed to enable creditors of the community to obtain judgments against the survivor and levy executions upon the property of such estates without administration (Tucker v. Brackett, 28 Texas, 336); and these are the rights, powers and capacities given by article 2236 to the wife until she marries.

Article 2237 provides: "Upon the marriage of the surviving wife, she shall cease to have such control and management of said estate, or the right to dispose of same, and said estate shall be subject to administration as in other cases of deceased persons' estates."

Thus the marriage is made of itself to put an end to those powers and capacities, the existence of which enabled the creditor, without other administration, to sue and subject community property to his debt. It is true that, without complying with the statute, a surviving husband may be sued by a community creditor, and, under a judgment thus obtained against the survivor, community property may be sold under execution (Carter v. Connor, 60 Texas, 52); and it may be true that a surviving wife, while remaining sole, would also have the same capacity

to represent the community estate; but upon her remarriage it would seem that this would cease.   Davis v. McCartney, 64 Texas, 584.

But the present case is controlled by the statute which declares not only that the power to control, manage, and dispose of the community estate, by virtue of which alone the surviving wife can represent and bind the interests of anyone but herself, shall cease upon her marriage, but that the estate shall be subject to administration as in other cases of deceased persons' estates.

Until the marriage takes place the estate is under administration of a peculiar sort, differing from ordinary administration; one difference being that creditors may sue the representative and sell the property under execution.   Upon marriage this administration ends and the estate becomes subject to the ordinary administration.   Sales under execution of property belonging to estates thus subject to regular administration are unknown to our law, whether an administrator has been appointed or not.   The question under discussion is virtually decided in Pucket v. Johnson, 45 Texas, 550.   In Woodley v. Adams, 55 Texas, 535, it is said by Judge Stayton that a sale under execution against the qualified surviving wife, after her second marriage, would not be void, but at most, only voidable.   The addendum to the opinion by the other justices leaves it doubtful what was the ground of that decision; but if Judge Stayton's remark be accepted as true, it does not control this case, where no sale has taken place, and the object of the proceeding is to prevent it.

The judgment in question was against Mrs. Stubbs in her representative capacity, and would not, therefore, support an execution against her personally; and an execution upon it could not legally run against community property, because there would be no party to it competent to represent the community estate.

3.   Mrs. Wingfield and her children being owners of the community estate, subject to administration, were the proper parties and are entitled to have the sale stayed and the execution abated.   Whether or not injunction was necessary or was the proper remedy, we do not understand to be asked.

The plaintiffs were entitled to have the sale stopped, and the question just alluded to does not seem now to be material.   Lockhart v. Stuckler, 49 Texas, 765.