HOLMAN v. HOUSTON OIL CO. OF TEXAS et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 4, 1912. Rehearing Denied Jan. 9, 1913.)

1. DEEDS (§ 208*)—DELIVERY—EVIDENCE.

Evidence *held* to show that a second deed from a grantor was delivered subsequently to a deed back from the grantee to the grantor, though dated prior thereto.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632, 634; Dec. Dig. § 208.*]

2. DEEDS (§ 114*) — CONSTRUCTION — INTENTION—GENERAL AND SPECIAL DESCRIPTIONS.

Where there is a repugnance between a general and a particular description, the latter will control; but, whenever possible, the real intention is to be gathered from the whole description, including both the general and the special.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

3. DEEDS (§ 119*)—PARTICULAR AND GENERAL DESCRIPTIONS — INTENTION — QUESTION FOR JURY.

Under a description in a deed of 810 acres, being an undivided interest in the H. league, and "being the interest owned by my father," the father in fact owning 1,789 acres, the question of how much the grantor intended to convey *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 342, 343; Dec. Dig. § 119.*]

4. DEEDS (§ 114*)—DESCRIPTION—INTENTION.

Where neither a grantor nor any of his ancestors had ever owned the west one-half of a league, but owned the east half, a deed of an undivided 810 acres in such league must be construed to convey land wholly in the east half.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

5. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE—MARRIAGE OF EXECUTRIX—EFFECT.

Where the wife was appointed executrix with another with a power to either to sell lands of the estate to pay debts, and the other executor died, the power given by the will was not annulled by her remarriage.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. § 138.*]

6. TRUSTS (§ 191*) — POWER OF SALE — MARRIAGE OF TRUSTEE—EFFECT.

Where a wife by the terms of her husband's will became trustee of the estate with power to sell, as well as executrix, her subsequent marriage did not ipso facto terminate such power of sale, whatever the effect of the marriage on her relation as executrix.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 243; Dec. Dig. § 191.*]

Appeal from District Court, San Augustine County; W. B. Powell, Judge.

Trespass to try title by W. L. Holman against the Houston Oil Company of Texas, and others intervene. Judgment for defendant and interveners as against the plaintiff and defendant, and for defendant as against the plaintiff, and both appeal. Reversed in part.

G. P. Dougherty, of Beaumont, for appellant Holman. Hightower, Orgain & Butler, of Beaumont, and H. O. Head, of Sherman, for appellant and appellee Houston Oil Co. of Texas. H. B. Short, of Center, Foster & Davis, of San Augustine, and G. P. Dougherty, of Beaumont, for appellee interveners.

REESE, J. In this case W. L. Holman brought suit in trespass to try title against the Houston Oil Company of Texas to recover the east half of the Nathaniel Hyden league of land, located in San Augustine county. Defendant answered by general demurrer, general denial, plea of not guilty, and special plea of the statute of limitation of four years. The action was begun by the filing of the original petition on August 20, 1904. On July 3, 1911, by leave of the court, Harriett J. Harrison joined by her husband, J. E. Harrison, R. L. H. Williams, and Mary M. Carnehan, joined by her husband, J. T. Carnehan, intervened in the cause and filed a petition in trespass to try title against

plaintiff and defendant for the land sued for "less and except out of the east half of said league 810 acres of land conveyed by the administrators of the estate of Lucius I. Holman to W. H. Ford by deed dated September 23, 1881." To the petition in intervention defendant pleaded as to the original petition. The case was tried with a jury, and the court instructed the jury to return a verdict in favor of interveners against plaintiff and defendant for all the land sued for except 810 acres, and in favor of defendant against plaintiff and interveners for the 810 acres. Plaintiff recovered nothing. From this judgment the plaintiff, W. L. Holman, and the defendant Houston Oil Company both appeal. It is made known to the court by the brief of plaintiff and interveners that they have settled the issues between them by agreement. Appellant Holman's brief is in substance a reply to the brief of the Houston Oil Company as appellant.

The evidence was substantially all documentary, and the evidence is undisputed. From this evidence we make the following conclusions of fact:

The Hyden league was granted by the government to Nathaniel Hyden October 14, 1835. Hyden conveyed the league to Lansing & Watson July 2, 1836. Lansing & Watson, by deed dated September 4, 1836, conveyed to John W. Holman the east half of the league, and John W. Holman in turn conveyed the said east half to Wm. W. Holman on February 3, 1838. This deed recites a consideration of $1,200. On January 8, 1874, W. W. Holman, son and only heir of the grantee in the preceding deed, and distinguished from his father by being designated sometimes as W. W. Holman, Jr., and sometimes as "Little Billy" Holman, executed a deed to Lucius I. Holman for a consideration of $500 in cash. As the controversy turns in large part upon a construction of this deed, we here copy that portion of it involved in the question of the proper construction of the deed: "Have this day bargained, sold, released, conveyed and delivered unto the said Lucius I. Holman, his heirs and assigns forever, eight hundred and ten acres of land part of the Nathaniel Hyden league situated in the county of San Augustine and state aforesaid and about twenty miles south of the town of San Augustine. The same to be an undivided interest in the said Nathaniel Hyden league and the said eight hundred and ten acres of land being the interest owned by my father in the said league of land as will appear by reference to the record of real estate for the county of San Augustine and state aforesaid."

W. W. Holman, Jr., having died, his will was duly probated in 1878, whereby he directed that his estate be equally divided between his surviving wife, Ann Catherine Holman, and his two sons, W. L. Holman (the plaintiff in this action) and John O. Holman.

John O. Holman died unmarried and without issue, and his estate descended to and vested in his mother, the said Ann Catherine, and his brother, W. L. Holman. The will appointed Lucius I. Holman and the widow of the testator, the said Ann Catherine, independent executors without bond, and they both qualified as such. The will has the following provision: "I desire and direct that Lucius I. Holman do act as the executor of this, my last will and testament, and also my wife, Ann Catherine Holman, to act as executrix of this, my last will and testament, and if one refuses to act, I desire that the other act, but I would rather both to act, if possible, and I authorize either of them to sell any of my lands to pay my debts."

The widow having married Sam Drain, and Lucius I. Holman having died, on October 19, 1881, she, joined by her husband, for a consideration, as recited, of $1,000 cash, conveyed to G. W. Norsworthy (quoting from the deed) "in fee simple and absolute interest, all the right, title, claim or interest which the estate of my former husband, W. W. Holman, deceased, had or has in and to the east half of the Nathaniel Hyden league of land lying and being situated in the county of San Augustine, Texas, on the Ayish bayou, about thirty miles south of the town of San Augustine, on the west side of Ayish bayou. The abstract of title to the east half of said league of land is as follows: Government title to Nathaniel Hyden for one league of land, October 14, 1835, Nathaniel Hyden to Lansing & Watson for whole league, 2d July, 1836, Book H, 248. Lansing & Watson to John W. Holman for east half of said league, 14th September, 1836, Book D, 82. John W. Holman to W. W. Holman, east half of said league, February 8, 1838, Book G, 201, and by this instrument of writing all of the said half of league of land commencing at the bayou and running back with both of the original lines a sufficient distance to embrace one-half of the said league, is conveyed, saving and excepting eight hundred and ten acres conveyed to Lucius I. Holman, and a tract conveyed to J. G. Woldert by Col. W. W. Holman in his lifetime on the 7th December, A. D. 1853, out of the N. W. corner of the said league. See Book I, page 61, Records of Real Estate for the said County of San Augustine, Texas." The deed recites that it is made "for the purpose of meeting the payment of unsettled demands still due and unpaid from the estate of my former husband, W. W. Holman, deceased," and is executed by Mrs. Drain in her capacity as executrix of the will of her said husband.

Lucius I. Holman having died, and E. A. Blount and J. E. Harrison (husband of the intervener, Harriett J. Harrison) having been appointed administrators of his estate, they conveyed to W. H. Ford, for a recited consideration of $567 cash (quoting from the deed), "810 acres of land, part of the Nathan-

iel Hyden league, situated on the west side of Ayish bayou about thirty miles south of the town of San Augustine, and the said 810 acres hereby conveyed being an undivided interest in and to a tract of eighteen hundred and sixty-four acres of the said Hyden survey, said eighteen hundred and sixty-four-acre tract being all of the east half of the said Hyden league, except a tract 1,400 varas square in the northeast corner of said league, which was conveyed by W. W. Holman to J. G. Woldert." This deed was regularly made under proper order of the probate court and is not questioned.

The evidence shows the following as to the tract referred to in the foregoing deed from Mrs. Drain, as having been conveyed by W. W. Holman (meaning the father of Little Billy Holman):

(1) A general warranty deed from W. W. Holman, Sr., to J. G. Woldert, dated July 7, 1848, conveying, in consideration of $207 cash, a tract of 425 acres of land in the northeast corner of the Hyden league. This deed was duly proven for record and recorded in Book G, p. 284. Records of San Augustine County, July 10, 1848. The field notes of this deed are as follows: "A certain tract or parcel of land situate, lying and being in the county of San Augustine, on the western bank of Ayish bayou, beginning at the northeastern corner of a league survey known as the Hiden survey; thence west 238 poles to a stake from which a red oak 24 in. dia. bears N. 35° E. 11 varas off, a red oak 14 in. dia. bears S. 40° E. 10 varas dist.; thence 244 poles a stake, from which a black jack 6 in. dia. bears N. 70° E. 4 varas dist., a pine 30 in. dia. bears south 85° W. 3 varas dist.; thence east 110 poles a branch course, north 126 poles a branch course S. E. 320 poles Ayish bayou, a stake, from which a holly 12 in. dia. bears north 42° W. 3.5 varas dist., a hickory 14 in. dia. bears N. 33° W. 5 varas dist.; thence up said bayou with its meanderings to the place of beginning—containing four hundred and twenty-five (425) acres, 1 rood and 36 poles."

(2) A deed dated December 12, 1853, and acknowledged and recorded the same day, from J. G. Woldert to W. W. Holman, Sr., conveying, for a recited consideration of $1, this 425 acres in the northeast corner of the Hyden league by the same description identically as is used in the foregoing conveyance from Holman to Woldert. This deed contains the following: "It is expressly understood that I warrant no further than me and heirs. Said land was sold to me by said Wm. W. Holman, and was surveyed out of a wrong league, which will show on record in B. 'G,' p. 284. We both have no right to it."

(3) A deed from W. W. Holman, Sr., to J. G. Woldert dated December 7, 1853, *and acknowledged and filed for record December 28, 1853*, conveying the said 425 acres by the following description: "Commencing at the northeast corner of a league survey known as the Nathaniel Hyden survey on the west bank of the Ayish bayou, about 30 miles south of the town of San Augustine, a stake, from which a wild peach bears north 11° west 10 varas, a black oak marked N. H. bears south 76° W. 14 varas; thence down the bayou with its meanders 1,400 varas in a direct line to corner, a wild peach marked XW; thence north 1,400 varas to corner, a pine marked XW bears S. 32° east 6 varas, another pine marked XW bears S. 70° west 1 vara; thence east 1,400 varas to beginning. Containing four hundred and twenty-five (425) acres." This is a general warranty deed and recites a consideration of $207 in cash, which is the same consideration recited in the first deed from Holman to Woldert. With reference to these deeds plaintiffs and interveners contend that the deed from Woldert to Holman, dated December 12th, was the last deed executed by delivery, and that this deed left the title to this 425 acres in W. W. Holman, Sr., and this the court found as a matter of law. The defendant Houston Oil Company, on the contrary, contends that the second deed from Holman to Woldert dated December 7th and acknowledged and filed for record on December 28, 1853, was the last of the three deeds executed by delivery, thus leaving the title in Woldert.

On November 12, 1881, J. G. Woldert for a recited consideration of $425 by deed with general warranty conveyed this 425 acres by the same description as in the foregoing deed of December 7, 1853, to G. W. Norsworthy. The title of Norsworthy by mesne conveyances, not necessary to set out, passed to, and at the time of the trial was vested in, the Houston Oil Company. The title conveyed to W. H. Ford to the 810 acres conveyed to him by Blount and Harrison, administrators of Lucius I. Holman, passed also to Norsworthy, and by mesne conveyances passed to, and at the time of the trial was vested in, the Houston Oil Company, as did also the title conveyed by the deed from Ann Catherine Drain to G. W. Norsworthy, dated October 19, 1881, heretofore referred to, thus giving to the Houston Oil Company a consecutive chain of conveyances to the entire east half of the Hyden league.

It was shown that on March 26, 1837, W. W. Holman, Sr., conveyed to J. G. Barksdale 1,000 acres of land by the following description: "Lying and being in the county of San Augustine, and containing one thousand acres; the said land lies between the Ayish bayou and the River Angelina, in the forks of said streams, in Zavala Colony, about 10 or 12 miles from the town of Jackson; the said land lies on the west of a half of the league of land obtained from the government by the citizen Nathaniel Hyden, from the legal commissioner, as a colonist, which may be seen by reference to the rec-

ords at Nacogdoches." This deed was offered in evidence by the Houston Oil Company and was admitted by the court upon the issue of the construction of the deed from W. W. Holman, Jr., or Little Billey, to Lucius I. Holman. This deed was filed for record April 4, 1874.

Neither John W. Holman, W. W. Holman, Sr., or W. W. Holman, Jr., ever at any time had or claimed to have title to any land on the west half of the Nathaniel Hyden league. The interveners are the sole heirs at law of Lucius I. Holman, who died intestate. The following agreement was made by counsel for the plaintiff and defendant: "It is hereby agreed, for the purpose of this trial, that neither the defendant, Houston Oil Company of Texas, at the time of its purchase of the land and premises in controversy herein, nor any of its predecessors in the title, at the time of their respective purchases, had any notice, actual or constructive, of any facts or circumstances sufficient to put them upon inquiry as to the invalidity of a conveyance of the land and premises in controversy by Ann Catherine Drain, formerly Ann Catherine Holman, as executrix of the last will and testament of W. W. Holman, deceased, dated October 19, 1881, and acknowledged before John Collier, a notary public in and for Denton county, Tex., on the same day, or as to the claim of plaintiff herein, and that said defendant and each of its predecessors in title purchased the land and premises in controversy, paying therefor a valuable consideration, and in reliance upon the recitation in said deed that the sale of said premises was made by said Ann Catherine Drain for the purpose of meeting the payments of unsettled demands due at that time from the community estate of W. W. Holman and his wife, Ann Catherine Holman, who afterwards became Ann Catherine Drain."

It will be noticed that in the deed from Holman to Woldert dated December 7, 1853, and filed for record December 28, 1853, the field notes of which are set out, there is an omission of the second call; that is, from the end of the first line to the beginning of the third line. The description is such that this call can be readily supplied from the other calls in this deed, and we find that this omitted call should be west 1,400 varas from the end of the first line.

W. W. Holman's will was probated in Denton county, and in the inventory of the property, filed by his executors, no land is listed in the Hyden league in San Augustine county. The court, in peremptorily instructing the jury, instructed them in substance: (1) That the deed from W. W. Holman, Jr. (Little Billy), to Lucius I. Holman conveyed the entire east half of the league, and that plaintiff, W. L. Holman, had no title; (2) that the deed from the administrators of Lucius I. Holman conveyed 810 acres of the east half

of the league to W. H. Ford, and that the Houston Oil Company has this title; (3) that the deed from Ann Catherine Drain, as executrix of W. W. Holman, to Norsworthy, conveyed no title, first, because the estate of her testator had none to convey, and, second, because after her marriage to Drain she could not exercise the trust powers conferred upon her by the will of her husband, and her deed was void. The court said nothing about the several deeds between W. W. Holman, Sr., and Woldert with regard to the 425 acres in the northeast corner of the half league; but the necessary consequences of his peremptory instruction was that the deed from Woldert to Holman, dated December 12, 1853, was the last of said deeds executed and left the title in W. W. Holman, Sr., which descended to his son, Little Billy, and passed by his deed to Lucius I. Holman. This involved the conclusion, as a matter of law, that the deed from W. W. Holman to Woldert, dated December 7th and filed for record December 28th, was in fact delivered on the day of its date.

The following questions are presented by appropriate assignments of error:

First. Whether the deed from W. W. Holman, Sr., to J. G. Woldert, dated December 7, 1853, and acknowledged and filed for record December 28th, was executed by delivery on the day of its date, or on the day of its acknowledgment and filing for record.

Second. Whether the deed from W. W. Holman, Jr., to Lucius I. Holman, conveyed only 810 acres of the east half of the Hyden league, or all of the land in such east half of the league, which was owned by W. W. Holman, Sr., and which was inherited by the grantor.

Third. Whether, if this deed conveyed only an undivided 810 acres, such interest was in the whole league, or in the east half; the contention of appellant being that by the terms of this deed 810 acres, undivided, of the whole league was conveyed, and that the deed must be construed to convey an undivided interest of 405 acres in the east half and a like quantity in the west half.

Fourth. Whether the power of the widow of W. W. Holman, Jr., as independent executrix under the will, to convey land, ceased upon her subsequent marriage to Sam Drain.

Addressing ourselves to these questions, without discussion in detail of the several assignments of error of appellant and appellee the Houston Oil Company, in which they are presented in various forms, we will pass upon the questions in the order in which they are stated above.

[1] The question as to the presumption of law as to the date of delivery of a deed, whether the date of its signing or the date of its acknowledgment, where this is a material issue, was presented in the case of Kirby v. Cartwright, 48 Tex. Civ. App. 8, 106 S. W. 744. The deed there under discussion

was dated May 18th but was not proven for record until June 25th following, and it was a material question whether it was delivered on the former or latter date. It had been, prior to the decision of this case, decided by the Court of Civil Appeals of the Fourth District in Kent v. Cecil, 25 S. W. 715, that, in the absence of evidence as to the date of delivery of a deed, the presumption would be that the deed was delivered on the date of its acknowledgment, and that this was in accordance with the weight of authority. This court was not inclined to agree with the statement as to the weight of authority. However, this court in deciding the question did not think that it was required to act upon the legal presumption alone. We quote from the opinion: "However the general rule as to presumption may be, all the authorities agree that such presumption is to be indulged only in the absence of evidence as to the date of delivery, and may be overcome by circumstances tending to show that the deed was delivered at its date, or not until its acknowledgment, as the case might be. We think the circumstances in the present case are sufficient to overcome the presumption that the deed was delivered on the date of its acknowledgment, if that rule be the correct one as laid down in Kent v. Cecil, supra."

In the present case the circumstances are, we think, most cogent and convincing in support of the conclusion that the deed from Holman to Woldert dated December 7, 1853, and acknowledged for record December 28th following, was not in fact delivered until the latter date. These circumstances are inherent on the face of the three deeds, and naturally arise from the nature of the transaction as shown by the deeds. The first deed from Holman to Woldert, executed in 1848, conveyed to Woldert a tract of land in the northeast corner of the Hyden league, and said to contain "425 acres, 1 rood and 36 poles." The length of the line is given in poles. The consideration recited was $207 cash, and the deed contained covenants of general warranty. By deed dated December 12, 1853, Woldert reconveys this land by identically the same description to Holman for a recited consideration of $1. This deed contains the following significant recital: "It is expressly understood and I warrant no further than me and heirs. Said land was sold to me by said Wm. W. Holman, and was surveyed out of a wrong league, which will show on record in B. 'G,' p. 284. We both have no right to it."

The former deed from Holman to Woldert was recorded in Book G, p. 284, Deed Records of San Augustine County. It is too clear to admit of discussion that the purpose of this deed was to cancel the previous deed from Holman to Woldert by a reconveyance of the land to Holman. Both deeds cover a tract of land of 425 acres in the northeast corner of the Hyden league; but we judge,

by the recital referred to, that, in making the survey for the first deed, land was surveyed out of the wrong league, and that neither of the parties had any title to the land so conveyed. Whatever the reason may have been, there is no escape from the conclusion that the purpose of the second deed was as stated. By deed dated December 7, 1853, and proven for record December 28, 1853, Holman conveyed to Woldert a tract of land out of the northeast corner of the Hyden league, described as beginning at the northeast corner of the league and running thence south, west, north, and east to the beginning; each line being 1,400 varas in length, and the tract containing 425 acres, as recited. While all the deeds call for the northeast corner of the league as the beginning, the field notes are slightly different in the last deed, in addition to using varas instead of poles in describing the length of the lines. The deed last referred to is a general warranty deed and recites the same consideration as the first deed from Holman to Woldert executed in 1848. It is, in our opinion, utterly unreasonable to suppose that Holman, having executed to Woldert the deed dated in 1848, afterwards, on December 7, 1853, executed to him a second deed for substantially the same land, but under a description which accurately describes the 425 acres as it is claimed by the parties to this suit, and that in a few days thereafter—that is, on December 12th—Holman bought the land back from Woldert for the nominal consideration of $1, taking a deed with the identical description given in the deed from himself to Woldert in 1848, and containing the recital that "said land was sold to me by Wm. W. Holman and was surveyed out of a wrong league, which will show on Book G, p. 284. *We both have no right to it."*

The thing is preposterous. The only reasonable conclusion to be drawn from the evidence of these deeds is that Woldert was for some reason dissatisfied with the first deed, and that on December 7th Holman signed the deed referred to, conveying the land to Woldert by a more accurate description, but, not caring to have two deeds out of the same land, required Woldert to cancel the first deed by a reconveyance of the land to him, and after this was done he then, on December 28th, delivered the deed dated December 7th, thus accomplishing the object sought by both parties of vesting in Woldert, by a satisfactory deed, title to the 425 acres. It is difficult to see how any other result can be arrived at from the evidence of these three deeds alone. There is no room for the doctrine of legal presumption as to the date of delivery in the presence of such evidence. It is further a most significant circumstance that when the widow and executrix of W. W. Holman, Jr., came to sell and convey to Norsworthy what she supposed was the land owned by the estate

of her deceased husband in the east half of the Hyden league, she excepts from such conveyance not only the 810 acres conveyed by her husband to Lucius I. Holman, but also "a tract conveyed to J. G. Woldert by Col. W. W. Holman in his lifetime on the 7th of December, A. D. 1853, out of the northwest (evidently a clerical error and intended for northeast) corner of the league. See Book I, p. 61, Records of real estate of San Augustine, Texas." The evidence shows that the deed from W. W. Holman, Sr., to Woldert dated December 7, 1853, and proven for record December 28, 1853, was recorded in Book I, pp. 60, 61, Deed Records of San Augustine County, showing conclusively, if anything more were needed than the face of the three deeds to show this fact, that the executrix of W. W. Holman, Jr., gave the same effect to these deeds; that is, that the last of the two deeds to be delivered was that from Holman to Woldert, thus placing the title to this 425 acres in Woldert, who, in 1881, conveyed the same to Norsworthy, followed by consecutive deeds down to appellant, Houston Oil Company. It appears that no other claim was ever asserted until the filing of this suit in 1904.

Under this construction of these deeds the title to the 425 acres is in the Houston Oil Company beyond question, and it must be so declared.

[2, 3] The second question presented by the appeal arises upon the construction of the deed from W. W. Holman, Jr., to Lucius I. Holman. The language of the deed, describing the land conveyed, is as follows: "Eight hundred and ten acres of land, part of the Nathaniel Hyden league, situated in the county of San Augustine and state aforesaid, and about twenty miles south of the town of San Augustine. The same to be an undivided interest in the said Nathaniel Hyden league, and the said eight hundred and ten acres of land being the interest owned by my father in the said league of land, as will appear by reference to the record of real estate for the county of San Augustine and state aforesaid."

There is no ambiguity in this description upon the face of the deed, no inconsistency or conflict between the description as 810 acres undivided in the league, and the further description of it as the interest owned by the father of the grantor in the league; but, when we come to apply the description to the land, it is found that the interest owned by the father was, in fact, not an undivided interest in the whole league at all, and not 810 acres only, but either the entire half league, as found by the trial court, or the half league except the 425 acres conveyed to Woldert, or 1,789 acres, if the league contained its proper quantity of land.

All of the rules for construction of written instruments tend to one end, to discover the real intent of the maker. This is the end

and prime purpose of the rule that, where there is a repugnance between the particular and the general description of the thing conveyed in a deed, the general description must yield to the particular, because that is presumed to more certainly express the intention of the maker. If land is conveyed by definite metes and bounds, showing its exact location on the ground, and it is further described as being in the south half of a particular league or tract, when it is found that in fact the metes and bounds locate the land in the north half of the league, or tract, the particular description must be regarded, because common sense and common experience teaches that such particular description more clearly indicates the grantor's intention. This is probably an extreme case, but serves to exemplify the rule. There might be a case where the more general description affords a better means of discovering the grantor's intention. A better expression of this rule cannot be found than the following quotation from Devlin on Deeds, §§ 1038, 1039, from the brief of appellees:

"Where there is a repugnance between a general and a particular description, the latter will control, but, whenever possible, the real intent is to be gathered from the whole description, including the general as well as the particular.

"Where the deed contains two descriptions of land conveyed, equally explicit, but between which there is a repugnance, that description which the whole instrument shows best expresses the intention of the parties must control. The court will look into the surrounding facts, and will adopt the description which is most definite and certain, and which, in the light of the surrounding circumstances, can be said to effectuate most clearly the intention of the parties."

It being impossible to give effect to both of these descriptions on account of circumstances which are made to appear aliunde the deed, the court is called upon, not to make a deed for the grantor, but to discover from the language of the deed, when interpreted in the light of surrounding circumstances, the grantor's intention. The question as it arises here is: Did Holman, owning 1,789 acres of land in an entire body in the Hyden league, intend to convey such tract, supposing it to be, and describing it as, 810 acres undivided, but intending at all events to convey all he owned, or that his father owned, as shown by the records, without regard to quantity, or did he intend to convey only an undivided interest of 810 acres, supposing that to be the extent of his interest, but intending, nevertheless, to convey no more than the 810 acres undivided? Now, what are the facts aliunde the deed which will assist in arriving at a correct conclusion as to Holman's intention? We suppose that there can be no doubt that the

grantor really supposed that both of these descriptions fitted the land he intended to convey. We have shown that Col. Holman had conveyed the 425 acres in the northeast corner. A deed was offered in evidence by the Houston Oil Company, and admitted, not for the purpose of showing title, but in explanation of Holman's intention in the deed to Lucius I. Holman, from John W. Holman, father of W. W. Holman, Sr., to J. G. Barksdale, dated in 1837, and recorded in 1874, after the execution of the deed to Lucius I. Holman, and which conveyed 1,000 acres of land by the following description: "Lying and being in the county of San Augustine, and containing one thousand acres; the said land lies between the Ayish bayou and the River Angelina, in the forks of said streams, in Zavala colony, about 10 or 12 miles from the town of Jackson; the said land lies on the west half of the league of land obtained from the government by the citizen Nathaniel Hyden from the legal commissioner as a colonist, which may be seen by reference to the records at Nacogdoches."

It does not clearly appear that this land was a part of the east half of the Hyden league; but there appears to be a strong probability that the particular description, when applied to the ground, would show that it was. It appears further that it was not on record when the deed to Lucius I. Holman was recorded. But there is at least a probability that W. W. Holman knew of the existence of this deed when he made the deed to Lucius I. Holman. The 1,000 acres would be an undivided interest, and, if this deed be considered as conveying an undivided interest in the east half of the Hyden league then owned by John W. Holman, it would have left, after deducting also the 425 acres, 789 acres undivided as the interest of W. W. Holman, Jr., in the east half of the league, if it contained no more than its proper quantity of land. Then the question would arise: If W. W. Holman supposed that his interest was no more than 810 acres undivided, was it his intention to convey no more than that quantity, or did he intend, at all events, to convey all he owned, without regard to quantity? If the latter, why should he have used at all the terms "810 acres, being an undivided interest in the Nathaniel Hyden league"? There is another circumstance which throws some light upon W. W. Holman's intention and the understanding of Lucius I. Holman as to the land conveyed. In 1881, seven years after the execution of the deed to Lucius I. Holman, his administrators made application to the probate court to sell, and were ordered to sell, and did sell and convey to W. H. Ford, land which it is entirely clear was what they understood as the land conveyed by W. W. Holman to said Lucius I, Holman by the deed under discussion. In their deed the land is described as follows:

"810 acres of land, part of the Nathaniel Hyden league, situated on the west side of Ayish bayou about 30 miles south of the town of San Augustine, and the said 810 acres hereby conveyed being an undivided interest in and to a tract of 1,864 acres of the said Hyden survey, said 1,864-acre tract being all of the east half of the said Hyden league, except a tract 1,400 varas square in the northeast corner of said league, which was conveyed by W. W. Holman to J. G. Woldert."

It would seem from this deed that the league contained more than 4,428 acres, and that this was known to the administrators. But it seems reasonably clear, at least it is a fair presumption, that the personal representatives of Lucius I. Holman, two years after his death, and seven years after the execution of the deed to him by W. W. Holman, construed that deed to convey only an undivided interest of 810 acres. This certainly was a circumstance to be considered in arriving at the intention of W. W. Holman, and of Lucius I. Holman as well. On the other hand is the circumstance that the executors of W. W. Holman in making an inventory of the property of his estate did not list any land in the Hyden league, evidently supposing that the estate owned none. How far this should be accounted for by the Barksdale deed was for the jury to determine.

Without paying much attention to the (often fine-spun) distinction between a general and a particular description of the land conveyed in a deed, our conclusion is that the court erred in holding as a matter of law, and so instructing the jury, that the deed from W. W. Holman, Jr., to Lucius I. Holman, conveyed the entire half league, or any more than an undivided interest of 810 acres.

It is insisted on the part of the interveners that, at all events, the evidence being either documentary, or undisputed as to such facts as were not so shown, it was the duty of the court to construe the deed in the light of such surrounding circumstances. If we thought so we would be inclined to construe the deed as the parties all seem to have construed it up to the time of the filing of this suit, 30 years after the date of its execution. But we think that the evidence presents a mixed question of law and fact which should have been referred to the jury for its determination under appropriate instructions; the issue being what, under all the evidence, inside and outside the deed, was Holman's intention as to what land was conveyed? Kingston v. Pickins, 46 Tex. 99; Brown v. Chambers, 63 Tex. 131; Arambula v. Sullivan, 80 Tex. 618, 16 S. W. 436.

[4] The third question presented by the appeal is, assuming that the Holman deed only conveyed an undivided 810 acres, whether this was to be out of the entire league;

that is, 405 out of the west half and a like quantity out of the east half. The court found, and so instructed the jury, that the deed conveyed only land in the east half. The evidence was that neither John W. Holman, W. W. Holman, Sr., nor W. W. Holman, Jr., ever owned or claimed to own any part of the west half of the Hyden league, but that John W. Holman owned the east half, which he conveyed to W. W. Holman, Sr., and that whatever of this half league he owned at his death descended by inheritance to W. W. Holman, Jr. The court did not err in holding that in the light of these facts the deed to Lucius I. Holman was intended to convey 810 acres in the east half of the league.

[5] The fourth and last question presents some difficulty. The facts have been fully stated with regard to the deed of Mrs. Drain to Norsworthy of the remainder of the half league, less the 810 acres, and the 425 acres. It was contended by interveners, and held by the court, that this deed was void for the reason that upon the marriage of Mrs. Drain to her second husband her power as independent executrix under the will of her husband ceased. The will empowered each of the coexecutors to sell for the payment of debts. Lucius I. Holman, the other executor, was dead. The deed of Mrs. Drain recites that the land was sold for the payment of debts, and it is not contended that this was not true.

The only Texas case we have been able to find on this point is McAllen v. Raphael, 96 S. W. 760, from the Court of Civil Appeals of the Fourth District. We construe the opinion to hold that Salome Young, widow and independent executrix under the will of her husband, John Young, had the power, as such independent executrix, after her marriage to McAllen, to execute the conveyance to Kennedy. It is true that the court holds further that the conveyance was one which she could have been compelled to make in an action for specific performance, and intimates that, without this conveyance of Mrs. McAllen, Kennedy had an equitable title to the land under the contract with Young, nevertheless the opinion does clearly hold that the marriage of Mrs. Young to McAllen did not operate a revocation of her power as independent executrix. The authorities cited by appellant Holman in his brief, to wit, Davis v. McCartney, 64 Tex. 584, Auerbach v. Wylie, 84 Tex. 615, 19 S. W. 856, 20 S. W. 776, Hasseldenz v. Dofflemyre, 45 S. W. 830, and Wingfield v. Hackney, 95 Tex. 490, 68 S. W. 262, are not conclusive, if they can be said to be in point at all. Each of them relates to the power of the survivor of the community, after her remarriage, to administer the community estate. In the case of Davis v. McCartney, all that is said, further than that the statute in express terms provides that the power of the surviving widow ceases on her subsequent marriage, is obiter dictum. It is merely in justification of the statute, which was not attacked. The case of Wingfield v. Hackney, arose under the statute. In the other two cases cited the conveyances were executed by the surviving wife before the passage of the act of 1856 referred to. But we think that there is an essential difference between the power of the surviving wife, arising by operation of law, to convey the community property and the power conferred upon the widow by the express terms of the will to sell property of her testator. If the husband did not see fit to limit the exercise of such power to her widowhood, we are unable to see anything in the general policy of the law which would do so. She had become by the death of Lucius I. Holman sole executrix, and indeed by the terms of the will she was practically sole executrix, in that each was given power to sell and convey land for the payment of debts, independently of the other. On this point it is stated in 18 Cyc. 148, that a familiar distinction is that "where a feme sole is executrix or administratrix with others and afterwards marries, her power is terminated, but that where she is sole executrix her power does not terminate," citing many cases in support of the text, most of which are in point. The doctrine is also stated in 21 Cyc. 1330, that "if a married woman is a trustee, or acting under a power contained in a written instrument, she may convey the trust property without the consent of her husband." Moore v. Cottingham, 90 Ind. 239; Claussen v. La Franz, 1 Iowa, 226; Gridley v. Westbrook, 23 How. 503, 16 L. Ed. 412; Cranston v. Crane, 97 Mass. 459, 93 Am. Dec. 106.

[6] But if the marriage of Mrs. Holman to Drain had any effect on her power as independent executrix under the will, we do not think that it ipso facto terminated such power and rendered her conveyance void. She was in fact by the terms of the will a trustee, and it is to the law regulating the appointment of trustees and their powers that we must look for authority upon this question. It is familiar law that if one is appointed trustee who is incompetent to act, or afterwards becomes incompetent, this is ground for removal and does not render his acts void. It is said in 1 Perry on Trusts that a woman will be removed from office if she is appointed trustee while sole and afterwards marries. 1 Perry on Trusts, § 51; Massey v. Stout, 4 Del. Ch. 280; Lake v. De Lambert, 4 Vesey, 593. A statute of California provides that the marriage of a feme sole executrix or administratrix shall "extinguish" her powers. Under this statute it was contended that the marriage ipso facto and eo instanti terminates her powers. But it has been authoritatively settled by the decisions of that state that such subsequent marriage was only ground for a revocation of her powers, and that her acts were not void. Cosgrove v. Pitman, 103 Cal.

268, 37 Pac. 234; Schroeder v. Superior Court, 70 Cal. 343, 11 Pac. 651; McMillan v. Hayward, 94 Cal. 357, 29 Pac. 774. In Rhode Island, under a statute forbidding the appointment of a feme covert as administratrix, it was held that where a feme sole was so appointed her subsequent marriage did not vacate the office. Weaver v. Industrial Trust Co., 24 R. I. 35, 51 Atl. 1050; Curran v. Green, 18 R. I. 329, 27 Atl. 596.

Our conclusion is that the trial court erred in holding that the deed of Mrs. Drain, as executrix under the will of W. W. Holman, Sr., was void. Our conclusion further is that the judgment should be affirmed in so far as it awards the 810 acres in the east half of the Hyden league to the Houston Oil Company, and that as to the 425 acres in the northeast corner of the league the judgment should be reversed and here rendered in favor of said oil company; it having shown indisputable title thereto. As to the remainder of the half league, the judgment is reversed, and the cause remanded for a new trial of the issue as to the proper construction of the deed from W. W. Holman to Lucius I. Holman, in accordance with this opinion. The costs of this appeal should be taxed one-half to the appellant Holman and one-half to the interveners. Let the judgment be so entered.

Affirmed in part. Reversed and rendered in part. Reversed and remanded in part.