## CHESTNUT v. CASNER et al.
### No. 7633.

Court of Civil Appeals of Texas. Austin.
July 22, 1931.

Rehearing Denied Sept. 23, 1931.

Ferguson, King & Zimmerman, of Burnet, for appellant.

A. J. Wirtz and W. S. Gideon, both of Seguin, and F. H. Hammond, of Burnet, for appellees.

BLAIR, J.

Appellee Mrs. Mattie K. Casner, joined by her husband S. C. Casner, sued appellant, O. K. Chestnut, in trespass to try title to 100 acres of land out of the Isaac Casner survey in Burnet county, asserting title thereto under deeds duly recorded, and by the five, ten, and twenty-five year statutes of limitations. Appellant filed formal answer, and by cross-action asserted title to an undivided three-tenths interest in the 100 acres, denying that he was barred to assert such title by any statute of limitations. A trial to the court without a jury resulted in judgment for appellee for title and possession of the land; hence this appeal.

The state of Texas patented the Isaac Casner survey to Wm. Simmons in 1885. Simmons conveyed 200 acres out of the survey to J. B. Hughes, who died intestate, leaving as his sole heirs his wife, Mary, and two children, Minnie and Edward Hughes. The wife later married John S. Watson, and the daughter, Minnie, married J. B. Maxwell; and Maxwell was appointed guardian of Edward Hughes. On August 15, 1874, Mary F. Watson, joined by her husband, John S. Watson, executed a deed to Delevan Chadwick conveying the following described land: " * * * All our right, title and interest in and to an undivided one-half of the tract of land purchased by J. B. Hughes now deceased, who in his lifetime was the husband of the said Mary F. Watson, from one William Simmons, containing 200 acres, more or less."

To this deed was appended after the signatures of the grantors the following:

"Sketch and field notes of the dividing lines and corners made in conformity with an agreement between Delevan Chadwick and J. B. Hughes, decd. in dividing the two hundred acres of land purchased by them out of the 1280-acre survey patented to William Simmons assignee of Isaac Casner. (Here follows description of the two 100-acre tracts.) Survey this 16th day of July, 1874.

"D. C. Corwan, Surv."

In explanation of this appendage to the deed, and as showing the circumstances attending its execution, and that grantors only intended to convey the one-half interest of Mrs. Watson, formerly Mrs. Hughes, in the

100 acres thus partitioned to Chadwick, appellant offered to prove by witness W. M. Watson, as follows:

"I am seventy-eight years old. At the time this land was patented to Hughes I must have been about nineteen years old. I knew Hughes personally, lived right by him. This agreement between Hughes and Chadwick was made on the premises. I was there at the time it was made and my father was there. Hughes bought the property and came there on it and afterwards Chadwick came there on it and they made this agreement, that they would pay it out together and they would then divide it. I do not know whether Chadwick ever paid Hughes for what Hughes had ever paid. I do not know that he ever paid him anything or not. As to how much Hughes had paid down on it, I do not think they had discussed that. I do not know whether they discussed what was due on it, that was after Hughes had gotten the patent on the land. The substance of the agreement was, as I remember it, that Chadwick was to receive his portion of the land when he paid for it but in the meantime Hughes was to pay for the land and receive the patent on it. I do not know anything about when he paid or how much he paid or how much he was going to pay. I do not know whether he ever refused or ever paid anything on that or not."

"As to whether or not there was a small balance due on that which my father paid after Hughes' death, there was a settlement between them but I did not personally know what it was."

This evidence was excluded because it varied the terms of the deed, and three of appellant's four propositions complain that the court erred in excluding this evidence.

The 100 acres awarded to Chadwick is not in controversy; but the remaining 100 acres of the Hughes 200 acres, which appellee claims under a chain of title from the state through Simmons, Hughes, and by mesne conveyances of record to herself. More particularly she claims that the above deed conveyed the entire undivided one-half interest of Mrs. Watson as the widow of Hughes, to the entire 200 acres; and that she obtained the interest of the two Hughes children under a deed by Minnie Maxwell and her husband, J. B. Maxwell, executed in 1894, and recorded in 1895, conveying all right, title, and interest in the 100 acres in controversy, and under a deed by J. B. Maxwell as guardian of Edward Hughes, executed in 1896, and recorded in 1898, conveying a seven-tenths interest in and to the 200-acre Hughes tract, both deeds being executed and delivered to W. M. McDonald, appellee's father. W. M. McDonald and wife by will left their property to their children, who executed a partition deed which awarded to appellee the 100 acres in controversy; and which deed was executed and recorded in 1915. Appellee also claimed the 100 acres by the five, ten, and twenty-five year statutes of limitations, and the facts sustaining those pleas will be discussed under appellant's fourth and remaining proposition, contending that no actual ouster of him was shown by the evidence sufficient to start the running of any statute of limitations against him as a tenant in common.

Appellant claims a three-tenths undivided interest in the 100 acres in controversy under a deed executed to him in 1906, and recorded in 1906, by John Watson, Amos Watson, and Hattie Levy, joined by her husband, Ed. Levy, children of John S. and Mary Watson, conveying a three-tenths undivided interest in the 100 acres in controversy.

■■ Unquestionably the language, "all our right, title, and interest in and to an undivided one-half of the tract of land purchased by Hughes * * * containing 200 acres, more or less," as used in the deed from John S. and Mary Watson to Chadwick, conveyed the one-half undivided interest of Mrs. Watson in the entire 200 acres. Mrs. Watson owned an undivided one-half interest in the 200 acres and by this specific language conveyed that interest. And while it is true that the general rule, "that the purpose of the courts in the construction of deeds is to ascertain the intention of the parties applies to the description of the land as well as to other parts of the deed," still there is no occasion for applying that rule of construction where the intention appears from the language of the deed, or the attending circumstances. 14 Texas Jur. 1027, § 234; Woods v. Selby Oil & Gas Co. (Tex. Civ. App.) 2 S.W.(2d) 895, affirmed (Tex. Com. App.) 12 S.W.(2d) 994; Holman v. Houston Oil Co. (Tex. Civ. App.) 152 S. W. 885; Id. (Tex. Civ. App.) 174 S. W. 886, error refused; Hunt v. Evans (Tex. Civ. App.) 233 S. W. 854; Michon v. Ayalla, 84 Tex. 685, 19 S. W. 878.

■ But appellant seems to contend that the above language, "all our right, title and interest in and to an undivided one-half," is rendered ambiguous by the language of the partition agreement appended to the deed, and that parol evidence explaining the basis of that partition was admissible, and as showing that grantors only intended to convey a one-half interest in the 100 acres awarded to Chadwick. This contention is not sustained. The appendage does not appear in the statement of facts, but is referred to by appellee as being correctly quoted in appellant's brief. However, the language of the appendage does not attempt to limit or qualify the description of the land contained in the granting clause of the deed. It may be inferred from its recitations that the parties to the deed and the Hughes children are tenants in common of the 200-acre tract, and that Mrs. Watson as a tenant in common has conveyed her entire in-

terest to another tenant in common for a recited consideration, and to set apart to him one-half the land. The record title to the other undivided one-half interest was in the two Hughes children. One of them later conveyed the specific 100 acres in controversy to appellee's predecessor in title, thereby recognizing and ratifying the partition agreement between her cotenants and accepting the remaining 100 acres as her own; and the other conveyed a seven-tenths interest in the entire 200 acres to appellee's predecessor, thereby clearly conveying all his interest in the 100 acres in controversy. Appellant's predecessors in title recognized the partition agreement by conveying to appellant three-tenths of the specific 100 acres in question, referring in the deed to the 100 acres awarded to Chadwick. Chadwick took possession of and inclosed the 100 acres awarded to him. Such facts and circumstances indicate a purpose on the part of the parties to the deed to take and appropriate the 100 acres, one receiving the land and the other the consideration paid, in satisfaction of their interest in the whole tract and to leave the other 100 acres or one-half part to be appropriated by the other tenants in common, who were the record owners of the remaining one-half interest in the land.

██ The power of one cotenant to convey a definite portion of a tract of land to his cotenant, such portion representing his interest, is settled in this state. Osborn v. Osborn, 62 Tex. 495. And it is also settled that such conveyance will be enforced in equity where the cotenant takes possession of specific portions and all other cotenants ratify or acquiesce therein. A case very similar in point of fact is that of Easterling v. Simmons (Tex. Civ. App.) 293 S. W. 690, 694, error refused, which held as follows: "When Stedman fenced the 10⅜ acres and began the use and enjoyment of the same he became equitably entitled to have that identical part of the tract set aside to him in satisfaction of his interest therein whenever a partition between him and the minor, Rosa Bounds, was had. Osborn v. Osborn, 62 Tex. 495, 497; Robinson v. McDonald, 11 Tex. 385, 390, 62 Am. Dec. 480. Such action indicated a purpose on his part to take and appropriate that identical land in satisfaction of his interest in the whole tract, and to leave the uninclosed part to be appropriated by Rosa Bounds, who owned the remaining interest therein."

█ Manifestly this was the purpose of Mrs. Watson and Chadwick, and since the other tenants acquiesced in and ratified the partition, all the right, title, and interest of all these tenants in common in the 100 acres in controversy was conveyed to appellee's predecessors in title.

█ But, if it should be held that the partition agreement appended to the deed rendered ambiguous the language of the granting clause, then it avails appellant nothing under the rule of construction that even if there is ambiguity in a deed, and that it is capable of two constructions, that the one will be adopted which is most favorable to the grantee, and which conveys the largest interest that grantor could convey in the land. Rettig v. Houston West End Realty Co. (Tex. Com. App.) 254 S. W. 765; Couch v. Southern Methodist University (Tex. Com. App.) 10 S.W.(2d) 973. From our above conclusions we hold that the trial court did not err in refusing to admit in evidence the testimony of W. M. Watson, because the same would vary the terms of the deed as to the description of the land or interest therein intended to be conveyed, which deed was not ambiguous when read in its entirety and in the light of the attending circumstances.

██ The trial court held that appellee had title to the land in controversy by the five, ten, and twenty-five year statutes of limitations (Vernon's Ann. Civ. St. arts. 5509, 5510, 5519). This holding is attacked by appellant upon the ground that the evidence showed him to be a cotenant with appellee, and that there was no evidence showing an actual ouster of appellant of the technical possession given him by law as such cotenant. We do not sustain the contention. In 1894 and 1896, the two Hughes children conveyed by deeds recorded in 1895 and 1898 the 100 acres in controversy to W. M. McDonald, appellee's father and predecessor in title. McDonald went into possession of the entire 100 acres immediately or at least in 1894, and he and his heirs remained in continuous possession, using, paying taxes on, and claiming the entire 100 acres. It may be noted also that the deed of Mrs. Maxwell to W. M. McDonald, executed in 1894, and recorded in 1895, conveyed "all right, title and interest in and to" the 100 acres in controversy to McDonald. The partition executed by appellee's brother to her, dated and recorded in 1915, conveyed "all right, title and interest in and to" the 100 acres in controversy. Appellee has been in continuous possession since before the execution of that partition deed of the entire 100 acres, has cultivated and used the land, paid taxes each year before they were delinquent, and has claimed the land adverse to every one, and the land has been under the fence of appellee since 1921 or 1922. This suit was instituted in 1930, and appellant answered in November, 1930, setting up his cross-action. These facts show title in appellee by the five, ten, and twenty-five year statutes of limitations, under the holding of Olsen v. Grelle (Tex. Com. App.) 228 S. W. 927, as follows: "That the cotenant not in possession must have actual knowledge of the fact that the cotenant in possession is disputing his right to the property, or such cotenant's possession and assertion of hostile claim must be so notorious as to authorize the presumption

that the other joint owner had knowledge thereof, is well established in this state. Stiles v. Hawkins [Tex. Com. App.] 207 S. W. 89, and authorities there cited. But it is equally as well established that where one goes into possession of property under deed, or deeds, executed by a cotenant, and purporting to convey the entire property, such possession is hostile to that of the cotenant, and he is charged with knowledge of the hostile character thereof."

So, if it be conceded that appellant and his predecessors in title were cotenants with appellee and her predecessors in title, the latters' possession and assertion of hostile claim were so open and notorious for nearly forty years as to authorize the presumption that the appellant and his predecessors in title had knowledge thereof under the rule above quoted. The second rule above quoted is also applicable here. If Mrs. Maxwell was a cotenant of appellant's predecessors in title as claimed, she conveyed by deed, dated in 1894, and recorded in 1895, the entire 100 acres in controversy, and her grantee, appellee's predecessor in title, went into possession under that deed, and "such possession is hostile to that of the cotenant, and he is charged with knowledge of the hostile character thereof." Olsen v. Grelle, supra; Little v. Wagner (Tex. Civ. App.) 5 S.W.(2d) 232; McBurney v. Knox (Tex. Civ. App.) 259 S. W. 667; Huling v. Moore (Tex. Civ. App.) 194 S. W. 188.

It may also be noted here that while the appellant apparently claims to be a tenant in common with appellee, his title was not acquired until after the title of appellee, and appellant's predecessors in title were therefore the cotenants of appellee, and there is nothing to indicate that they did not have full notice of appellee's claim. Eastham v. Gibbs, 58 Tex. Civ. App. 627, 125 S. W. 372.

The other evidence shows that appellee repudiated personally the claims of appellant some fifteen or twenty years prior to the time he filed his cross-action.

We find no error in the judgment, and it is affirmed.

Affirmed.